# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00002-CV

T. L., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
NO. 17-0004-CPS395, HONORABLE RYAN D. LARSON, JUDGE PRESIDING

## MEMORANDUM OPINION

T.L. appeals a final order, following a bench trial, terminating her parental rights to three of her children—M.L., M.E.L., and K.L.[1]  The order rested on findings, based on clear-and-convincing evidence, of four alternative statutory termination grounds—T.L. had (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, (3) failed to comply with the provisions of a court order specifically establishing the actions necessary to obtain the return of the children, and (4) used a controlled substance in a manner which endangered the children's health or safety and either failed to complete

---

[1] We refer to the children, their parents, and other family members by their initials to protect their privacy.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b)(2).

a court-ordered substance abuse treatment program or continued to abuse a controlled substance after completing such a program—plus the required additional finding that termination was in the children's best interest.[2]

In this appeal, T.L. brings a single issue challenging the factual sufficiency of the evidence supporting the best-interest finding. We will affirm the district court's order of termination.

## STANDARD OF REVIEW

The Department had the burden to prove, by clear and convincing evidence, that T.L. had engaged in conduct that amounts to statutory grounds for termination and that termination was in the best interest of the children.[3] Clear and convincing evidence is a heightened burden of proof that requires "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[4] We apply a standard of review on appeal that reflects this burden of proof,[5] focusing on "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'"[6]

---

[2] *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (P), (2).

[3] *See In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

[4] Tex. Fam. Code § 101.007; *C.H.*, 89 S.W.3d at 25.

[5] *See, e.g.*, *In re J.F.C.*, 96 S.W.3d 256, 264–66 (Tex. 2002).

[6] *Id.* at 266 (quoting *C.H.*, 89 S.W.3d at 25).

In analyzing whether such evidence is factually sufficient to support a finding, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing," but also "should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding."[7] "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."[8]

## ANALYSIS

T.L. concedes that legally and factually sufficient evidence supports at least one of the alternative statutory termination grounds but challenges the factual sufficiency of the evidence supporting the best interest finding.[9]

In addressing this challenge, we consider the well-established *Holley v. Adams* factors, which include the children's wishes, the children's emotional and physical needs now and in the future, emotional or physical danger to the children now and in the future, the parenting abilities of the parties seeking custody, programs available to help those parties, plans for the children by the parties seeking custody, the stability of the proposed placement, the parent's conduct

---

[7] *Id.*

[8] *Id.*

[9] Because the statutory grounds are alternative, proof of only one statutory ground is required. *See, e.g.*, *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014). The district court's unchallenged findings as to the statutory grounds are binding on appeal. *See, e.g.*, *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

indicating that the parent-child relationship is improper, and any excuses for the parent's conduct.[10]

The Department need not prove all of the *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination was in a child's best interest.[11] "[T]he need for permanence is a paramount consideration for the child's present and future physical and emotional needs."[12] Moreover, the parent's statutorily offensive conduct is often intertwined with the best interest finding.[13]

The district court heard evidence that T.L. had an extensive history of substance abuse. M.A.L., the father of at least two of the children,[14] testified that he and T.L. abused drugs and alcohol from the beginning of their relationship. When they met, M.A.L. recounted, T.L. drank heavily and occasionally smoked marijuana. M.A.L. testified that he introduced T.L. to methamphetamine the following year and that T.L. used it "every weekend" thereafter. M.A.L. testified also that he had seen T.L. around the children while under the influence of methamphetamine.

---

[10] *See* 544 S.W.2d 367, 371–72 (Tex. 1976).

[11] *See C.H.*, 89 S.W.3d at 27.

[12] *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ)); *see* Tex. Fam. Code § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.").

[13] *See, e.g., In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

[14] More precisely, M.A.L. is the father of M.L. and M.E.L. and the alleged father of K.L. His parental rights to all three children were terminated by the same order that terminated T.L.'s rights. M.A.L. has not appealed.

The Department first became involved with the children because of a drug-related incident in March 2016. Officer Michael Losoya of the Round Rock Police Department testified that he responded to a report of a child left unattended in a car parked in front of a Wal-Mart. Losoya arrived to find that T.L. and A.R., T.L.'s boyfriend at the time, had returned to the vehicle and were arguing with the person who had made the report. According to Lesley Barbiaux, a supervisor with the Department, T.L. had left two of her children (M.E.L., then two years of age, and K.L., then an infant) in the car with A.R., but A.R. had subsequently left them in the car and joined her in the store without them. But of greater significance to Officer Losoya, he recounted, was that T.L. smelled of alcohol and almost dropped the infant to the ground several times. Losoya secured T.L.'s permission to search the vehicle and found a clear plastic baggie in the center console containing methamphetamine (confirmed by a field test) and a pipe, which smelled of marijuana.[15]

Barbiaux testified that she met with T.L. several days later to discuss the incident and asked her to take a drug test. At that time, Barbiaux recounted, T.L. admitted to using methamphetamine and marijuana the previous day. Barbiaux decided to remove the children from T.L. and place them with M.A.L.[16] T.L. testified that she began living with M.A.L. and the children shortly afterwards and stayed until June. During this time, M.A.L. recalled, he and T.L. would go out into their car and use methamphetamine while the children slept. T.L. maintained that she continued to visit the children there through November.

---

[15] According to Barbiaux, the search also revealed two empty bottles of tequila.

[16] Barbiaux added that the Department removed another child of T.L.—apparently unrelated to M.A.L.—and eventually obtained temporary custody of her. That child is the subject of a companion case filed by the Department in the district court.

Barbiaux testified that the children were removed from M.A.L. in January 2017.[17] According to Constance McBride, who handled the removal for the Department, the children were initially sent home with T.L., who was living with her mother and stepfather at the time. The children were removed the next day and placed into foster care because T.L.'s stepfather would not allow the children to stay, and T.L. did not have another option for the children that was acceptable to the Department. Thao Pina, another Department caseworker, testified that the children had health problems at the time they were placed into care—one had a benign eyelid tumor, another had fungal infections on his head and legs, two exhibited developmental delays, and all three children were underweight.

Pina and McBride also testified that T.L. had engaged in continuing substance abuse after the children were placed in foster care. McBride testified that T.L. took a drug test in January 2017 that was positive for opiates. Pina testified that T.L. completed an intensive substance abuse treatment program later that year but was arrested in May for driving while intoxicated.[18] In her testimony in this case, T.L. admitted that the offense occurred nine days after she completed the program and that she had consumed "10 or 11 beers." Pina added, and T.L. confirmed, that T.L. had two more positive tests for methamphetamine and other controlled substances.

---

[17] Barbiaux and Constance McBride, the Department caseworker who oversaw the removal, explained that the Department removed the children because M.A.L. was leaving them in the sole care of his sister while he worked even though he was aware that the sister suffered from schizophrenia and was not taking medication. Barbiaux added that M.A.L.'s sister was also dealing with "suicidal issues."

[18] *See* Tex. Penal Code § 49.04. The district court admitted a copy of the judgment of conviction in that case reflecting that T.L. pleaded guilty and was sentenced to serve three days in jail and pay a $250 fine.

The district court also heard evidence that the children were exposed to domestic violence. When questioned regarding whether her relationship with M.A.L. was violent, T.L. agreed that it was but offered no specifics. T.L. also affirmatively testified that A.R., another man with whom she had a relationship, would assault her during their relationship, including one incident in the hospital the day after she gave birth to K.L. T.L. maintained that the children never directly witnessed any violence (excluding an incident where A.R. threw a water bottle at her head during a car ride) but agreed that they were aware of it when it occurred.

T.L. testified that she subsequently became involved with yet another man but ended the relationship after discovering that he had been convicted of indecency with a child. T.L. denied ever leaving this man alone with the children, but the children's foster mother testified without objection that M.L., the oldest child, described an incident where T.L.'s "boyfriend had tied [M.E.L.] up to a chair and told him that if he said anything, that he would hurt them, and then that it was mentioned to [T.L.], and [T.L.] got upset by it." Pina testified, again without objection, that M.L. shared with a therapist that this man had "tied her brother up."

T.L. does not contest any of the acts or omissions summarized above—which do not constitute the entirety of the evidence adduced at trial—but argues that the evidence of her improvement is so significant that a reasonable factfinder could not find by clear and convincing evidence that terminating her parental rights was in the children's best interest. In particular, she asserts that she (1) no longer consumes alcohol, (2) has tested negative for drugs since completing an inpatient rehabilitation program in August 2017, (3) is employed at a fast-food restaurant where the management adjusts her schedule around her counseling sessions and Alcoholics Anonymous

7

meetings, (4) has obtained her stepfather's permission to bring the children into the home until she finds her own residence, (5) completed protective-parenting and domestic-violence classes, and (6) successfully avoided relationships involving domestic violence for over a year.

We acknowledge that T.L. professes to have made improvements and to have plans for the future, but "in considering the best interests of the child, 'evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past.'"[19] The factfinder "may permissibly infer that a parent's future conduct may be measured by recent past conduct as it relates to the same or a similar situation."[20] Deferring to the district court's assessment of the credibility of the witnesses and weight of the evidence,[21] the evidence of T.L.'s improvement is not so significant that the district court could not reasonably form a firm belief or conclusion that the children would be better off if not returned to T.L. and the risk of her returning to her previous course of conduct.[22] We accordingly conclude that factually

---

[19] *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.) (quoting *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.)).

[20] *In re J.D.*, 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see In the Interest of S.J.R.-Z.*, 537 S.W.3d 677, 692–93 (Tex. App.—San Antonio 2017, pet. denied) (op. on reh'g) ("A factfinder may also measure a parent's future conduct by his or her past conduct to aid in determining whether termination of the parent-child relationship is in the best interests of the children.").

[21] *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (when sitting as factfinder, the trial court is "the sole arbiter when assessing the credibility and demeanor of witnesses" (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005))).

[22] *See In the Interest of C.V.*, 531 S.W.3d 301, 308 (Tex. App.—Amarillo 2017, pet. denied) ("While it is to be hoped that the mother's assertions her lifestyle has changed are true, the court was not required to impose on the child the risks that the mother would return to her former lifestyle . . . ."); *In the Interest of D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no

sufficient evidence supports the district court's finding by clear and convincing evidence that termination of T.L.'s parental rights was in the best interest of the children.

We overrule T.L.'s sole issue.

## CONCLUSION

We affirm the district court's order of termination.

_____
Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   June 13, 2018

pet.) ("And, although [the mother] testified that she had no desire to use drugs in the future and she believed she could take care of [the child], we defer to the trial court on issues of credibility."); *In re A.M.*, 385 S.W.3d 74, 83 (Tex. App.—Waco 2012, pet. denied) (factfinder "was free to reject [the mother's] assertions of future stability and of having learned from her mistakes").

9