**IN the INTEREST OF C.V., a Child**

**No. 07-17-00072-CV**

Court of Appeals of Texas,
Amarillo.

August 25, 2017

Rehearing Overruled September 27, 2017

Jerry L. Reyes, for Appellee.

Jim F. Shaw, Civil—Ad Litem for V., C.

Dale A. Rabe, for Appellant.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.[1]

## OPINION

James T. Campbell, Justice

Appellee the Texas Department of Family and Protective Services sought termination of the parental rights of the mother and the father to their child, C.V.[2] After a bench trial, the court signed an order terminating the mother's parental rights but not those of the father. It appointed the Department C.V.'s permanent managing conservator and the father possessory conservator.[3] At the time of the final hearing in February 2017, C.V. was twenty-one months old.

On appeal, the mother does not challenge the court's findings that she engaged in endangering conduct, placed C.V. in endangering conditions, and had her parental rights to another child terminated under Family Code section 161.001(b)(1)(D) or (E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (M) (West Supp. 2016). Rather, through a single issue she challenges the legal and factual sufficiency of the evidence supporting the finding that termination of her parental rights is in the best interest of C.V. After considering all the evidence, we conclude the evidence sufficiently supports the best-interest finding, and will affirm the trial court's order of termination.

Background

The mother is also the biological mother of S.V. and D.V. They were born in 2012 and 2014 respectively. Their biological father is J.V. The Department removed S.V. and D.V. in 2014 but the mother began working for their return under a court-ordered service plan. By the time of C.V.'s birth in May 2015 the mother's drug tests were negative and she was continuing to work on the service plan's requirements. The Department therefore did not initiate a case concerning C.V. During the summer of 2015 the mother and the father were each placed on community supervision; she for burglary of a vehicle, he for driving while intoxicated.

In September 2015, the Department returned S.V. and D.V. to the mother under a monitored return. The mother made sufficient progress under the service plan that dismissal of the Department's case was anticipated for December 2015. Preceding

---

1. Justice Patrick A. Pirtle, not participating.

2. To protect the child's privacy, we will refer to the parents as "the mother" and "the father" and the child by initials. *See* Tex. Fam.

Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8(b).

3. Neither the Department nor the father filed a notice of appeal.

dismissal, however, the Department directed the mother to submit to a hair-follicle drug assessment. The result of the December 4, 2015 test was positive for methamphetamines and cocaine. Because of the test result the Department immediately removed S.V., D.V. and C.V.

On the initiation of this case, the Department was appointed temporary managing conservator and C.V. was placed in foster care. The father and the mother appeared at the December 22, 2015 adversary hearing. In part, the order signed after that hearing specified actions necessary for the mother to obtain C.V.'s return. The father's paternity was judicially established by order of April 5, 2016.

The mother's parental rights to S.V. and D.V. were terminated after a jury trial held in June 2016. Their father, J.V., voluntarily relinquished his parental rights to those children.[4]

At the time of their December removal, the Department workers found the three children and the mother at a park. According to testimony, the day was cold and C.V. was found in a car seat, unkempt, and clothed only in a diaper. On December 15, 2015, a hair sample from C.V. tested positive for methamphetamines. Over a month later, the test was repeated at the mother's insistence but the result was again positive for methamphetamines. About a month after removal S.V. and D.V. were drug-tested and the results were negative for each.

The director of a testing laboratory testified at the final hearing in this case that the concentration of drug in C.V.'s sample was greater than the mother's. In his opinion, a child's positive test result might result from the child touching a contaminated surface with a hand and then placing the hand in the mouth. But, he believed, a positive result would not arise from a one-time occurrence. According to the director, a drug appears in the hair between four and eleven days of use with a ninety-day window for detection. The probation officer who supervised the community supervision cases of the father and the mother testified that the father told her in December 2015 he was concerned about C.V. because the mother took the children to the house of her sister, A.H., where he knew drugs were present.

The mother's probation officer testified at the final hearing the mother's urine specimen given the probation department on December 10, 2015, produced a negative result as did a late-January 2016 hair-follicle analysis. Likewise, a May 2016 urinalysis was negative. As part of the service plan in the termination case, the mother submitted to random drug screenings as directed and none were positive.

The father testified at the final hearing through an interpreter. At the time of the final hearing he was age fifty-four and the mother age twenty-three. He moved to Bailey County from Florida. He is a self-employed contractor largely doing work with stucco. He does not have a driver's license but depends on the mother for transportation. Following C.V.'s removal he and the mother began living together and doing stucco work together. They intend to marry one day, according to the father. The father testified that since he and the mother began living together their relationship improved. In his opinion, the mother's positive drug test was "false." He

4. On the mother's appeal, we affirmed the trial court's judgment. *See In re S.V. and D.V.*, No. 07-16-00279-CV, 2016 WL 7634473, 2016 Tex. App. LEXIS 13875 (Tex. App.—Amarillo Dec. 30, 2016, pet. denied) (per curiam, mem. op.). In that case, C.V. was referred to as "C.G."

further explained he and the mother were working together to regain custody of C.V.

After spending about three months in a foster home C.V. was placed with L.C., where she remained at the time of the final hearing. L.C. is the mother's half-sister who lives near Dallas. She holds a professional position and lives in a comfortable home with a large backyard, in what a caseworker characterized as a "very nice neighborhood." The caseworker added the children attend daycare and L.C. takes them on outings. D.V., C.V.'s half-brother, is also in L.C.'s care. L.C. did not testify at the final hearing but the caseworker testified that L.C.'s home passed a home study and in the caseworker's opinion would pass an adoptive home study because L.C. intended to seek adoption.

The mother's final-hearing defense highlighted her conduct from the time of C.V.'s removal in December 2015 until the final hearing. She testified, and proof to the contrary was not offered, that, since C.V.'s removal, she had not been arrested or used illegal substances or alcohol and had performed requested drug tests without a positive result, worked steadily with the father, completed a psychological evaluation, participated in counseling as ordered, completed parenting classes and anger management counseling, completed a drug and alcohol assessment, and was attending AA/NA meetings. In the mother's opinion, she completed the required services. The evidence showed the mother had limited visitation with C.V. after the child's placement with L.C. The mother and the father once traveled to L.C.'s residence to visit C.V. L.C. brought C.V. to Lubbock twice.[5] The mother testified she plans to continue living with the father and to place C.V. in daycare while she and the father work.

In her final hearing testimony, the mother asserted she had not used drugs since April 2014. She insisted the results of her December 2015 drug test were wrong, and suggested the test had been tampered with.

Through the testimony of a caseworker, the Department expressed disagreement with the mother's portrayal of improvement during the pendency of the case. The caseworker told the court the mother attended the services required by the plan but "did not demonstrate that she got anything from the services." Rather, the caseworker said, she remained in denial and did not address issues of her drug use and domestic violence. On cross-examination, the caseworker acknowledged she was not present for the mother's counseling sessions and did not know if domestic violence was discussed. She further acknowledged that the service plan did not mention domestic violence issues.

## Analysis

■ Through a single issue, the mother argues the evidence was legally and factually insufficient to support the finding that termination of her parental rights was in the best interest of C.V. Her argument rests chiefly on the evidence of her improved lifestyle since this child's removal and a contention termination of her rights could not effect permanency for C.V. because the father's rights were not terminated.

■ The standards for appellate review of the proof presented to meet the Department's burden of clear and convincing evidence are described in *In re K.M.L.*, 443 S.W.3d 101 (Tex. 2014) and *In re K.V.*, No. 07-16-00188-CV, 2016 WL 5929597, 2016 Tex. App. LEXIS 11091 (Tex. App—Amar-

---

5. L.C.'s residence is a six-to-seven hour drive from Bailey County. The mother and father on at least one occasion declined the Department's offer of bus passes.

illo October 11, 2016, no pet.) (mem. op.). In assessing the trial court's best-interest determination, we also compare the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).[6]

■ However, the *Holley* "listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley*, 544 S.W.2d at 372.[7] "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey*, 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). Unchallenged predicate-ground findings are binding and can support the best interest finding. *In re K.M.*, No. 07-16-00120-CV, 2016 WL 3660076, at *3, 2016 Tex. App. LEXIS 6886, at *6 (Tex. App.—Amarillo June 29, 2016, no pet.) (mem. op.); *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.]

2014, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 28).

On the record before us, we agree with the mother that her effort to the meet the requirements of her service plan and regain managing conservatorship of C.V. is laudable. The record demonstrates improvement in her conduct between December 2015 and the time of the final hearing in February 2017. Before the positive drug test in December 2015 the mother neared the completion of service-plan requirements in the case of her older children S.V. and D.V. Reunification with the older children was at hand. In this case concerning C.V., the mother performed a majority of the listed plan requirements and the Department did not seek termination for failure to accomplish court-ordered services. While working on those requirements in C.V.'s case, the mother had no positive drug tests and no arrests. The parenting class instructor testified that the mother attended twenty-two class sessions and actively participated. There was evidence of the mother's gainful employment, and of her intentions to remain with the father and to place C.V. in daycare.

But we cannot agree with her appellate position that proof of her progress during the fourteen months before the final hearing carried such force that a reasonable factfinder could not form a firm belief or

---

6. The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interests of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

7. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citing Family Code Section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent"); *In re S.V. and D.V.*, 2016 WL 7634473, at *1 n.2, 2016 Tex. App. LEXIS 13875, at *1 n.2.

conviction that termination of her parental rights was in the best interest of C.V. *See In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002) (evidence supporting court's finding factually insufficient if, in light of entire record, evidence reasonable factfinder "could not have credited in favor of finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction"). This Court and others have affirmed best interest findings despite evidence of compliance with a service plan and lifestyle improvements made while a parent's child is being cared for by others. *See In re A.C.B.*, 198 S.W.3d 294, 299-300 (Tex. App.—Amarillo 2006, no pet.) (notwithstanding post-removal improvement and performance of service plan, prior endangering conduct could support best-interest finding); *Castorena v. Tex. Dep't of Protective & Regulatory Services*, No. 03-02-00653-CV, 2004 WL 903906, at *11, 2004 Tex. App. LEXIS 3753, at *32-33 (Tex. App.—Austin 2004, no pet.) (noting that the trial court properly could infer that parents' history of instability and criminal conduct, which previously endangered the children, might recur if the children were returned to them); *In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[E]vidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue"). *See also In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (in evaluation of legal sufficiency of evidence of endangering conduct, noting "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices").

The mother disputed the results of her December 2015 hair-follicle drug test indicating the presence of methamphetamines and cocaine. To an extent she disputed the

evidence C.V. tested positive for methamphetamines later the same month. But she does not suggest on appeal that the trial court could not reasonably have credited the evidence supporting the accuracy of the drug tests. *See In re J.F.C.*, 96 S.W.3d at 266 (in legal sufficiency review, looking at evidence in light most favorable to judgment means reviewing court must assume factfinder "resolved disputed facts in favor of its finding if a reasonable factfinder could do so"). It was the role of the trial court as factfinder to assess the evidence supporting the accuracy of the test results and the parents' testimony disputing its accuracy. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (factfinder, having opportunity to observe witness testimony firsthand, is "sole arbiter" to assess credibility and demeanor of witnesses).

Keeping in mind that the mother does not challenge in this Court the findings she engaged in conduct that endangered C.V., we see in these facts a primary reason the trial court reasonably could have discounted, in its best interest analysis, the evidence of the mother's performance of service-plan requirements. In the case involving her older children, the mother essentially completed a plan of services, only to relapse into drug usage. In light of that experience, the court readily could have agreed with the Department's evaluation that, despite compliance with the service plan, the mother remained in denial of the impact of her conduct on her children. The evidence of the mother's compliance with the plan was not so significant as to preclude the court from forming a firm belief or conviction that termination was in C.V.'s best interest.

■ The mother further argues that permanency for C.V. is not served by terminating her parental rights because the father's rights were not terminated and

C.V. lives with the mother's half-sister. In that regard, we note also the evidence the father and the mother live together and expressed plans to stay together. Assessing the mother's argument, we acknowledge L.C.'s plan to adopt C.V. will be foreclosed without the father's consent and further judicial action. *See* TEX. FAM. CODE ANN. § 162.001 (West Supp. 2016) (identifying those who may adopt a child). And all indications in the record are that at the time of the final hearing C.V. was doing well in L.C.'s foster care. Nonetheless, we do not agree that those factors require a different best interest determination. In her position before this Court, the mother concedes her endangering conduct. The trial court made no finding the father had endangered the child. The court could have considered the mother's own conduct and circumstances, not the father's, to bear most heavily on the issue of best interest of her termination. *See In re K.R.M.*, No. 07-13-00429-CV, 2014 WL 1023812, at *3, 2014 Tex. App. LEXIS 2979, at *6 (Tex. App.—Amarillo Mar. 17, 2014, no pet.) (mem. op.) ("That one parent may have been afforded another chance to be a parent does not mean both must. . . . [The parent's] own conduct and circumstances are determinative"); *C.V. v. Tex. Dep't of Family & Protective Servs.*, 408 S.W.3d 495, 505-06 (Tex. App.—El Paso 2013, no pet.) (same). As Texas courts have long observed, the best interest analysis focuses on the best interest of the child, not that of the parent. *In re C.L.C.*, 119 S.W.3d 382, 399 (Tex. App.—Tyler 2003, no pet.) (citing *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ)). Moreover, considering the record as a whole, we do not agree that termination of the mother's rights necessarily will postpone C.V.'s permanent placement. *See* TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016) (the prompt and permanent placement of a child in a safe environment is presumed to be in the child's best interest).

Having expressed our disagreement with the mother's contentions regarding the court's best interest finding, we summarize the other evidence supporting the court's finding. The mother has a history of involvement with the criminal justice system. In 2011 she was convicted of forging a prescription for a dangerous drug and in 2015 she was convicted of burglary of a vehicle. For these convictions she served terms of community supervision. In 2014 she was convicted of assault causing bodily injury, a misdemeanor, and assessed a fine.

There was evidence the mother knowingly allowed C.V. to remain in conditions or surroundings that endangered her physical well-being, in addition to evidence the mother used illegal drugs to the point of actual injury to one of her children. After her first conviction, the mother completed a six-month program of rehabilitation but later used an illegal drug while pregnant with D.V. The child remained hospitalized for four months at birth. According to a Department caseworker, in October 2014, while pregnant with C.V., the mother tested positive for cocaine and methamphetamines.

There was evidence of the mother's aggressive and sometimes violent behavior. A police officer testified the father "several times" tried to have charges brought against the mother for "being hit, slapped on the face."

Numerous police reports were placed into evidence. Two of the reports concern events that ultimately resulted in the mother's conviction. Others describe conduct inconsistent with responsible parenting. On one occasion a female reported the mother, her sister A.H., and others were chasing the complainant's son and trying

to kill him. J.V., the father of S.V. and D.V., told officers the mother entered his home without permission and struck him in the face, drawing blood. During the summer of 2015, the father told police the mother slapped him, asked for money in exchange for sex, and had sex with others for money. Just over a week later, a female complainant told police she received threatening calls and text messages from the mother's phone. About an hour later, outside her residence and after she saw the mother's vehicle drive away, the complainant discovered her vehicle's four tires were slashed and its windshield broken. Other reports portrayed the mother as a victim of others' conduct. She once alleged J.V. assaulted her but declined to file charges. While S.V., D.V., and C.V. were in the mother's care she reported to police she pushed the father and he "punched" her in the face.

The father and the mother have a Jeep vehicle, and during 2015 they disagreed over its ownership. According to the father's testimony, these disputes resulted in calls to the police on two or three occasions.

During her testimony, the mother denied or minimized her involvement in many of these incidents. As to others, she acknowledged wrongdoing but asserted she no longer engaged in such violence.

The evidence permitted the trial court to conclude the mother's admitted conduct during the years preceding C.V.'s December 2015 removal was in many respects contrary to her small child's emotional and physical needs, her emotional and physical safety, and the stability of the mother's home. While it is to be hoped that the mother's assertions her lifestyle has changed are true, the court was not required to impose on the child the risks that the mother would return to her former lifestyle of drug use and violent conduct. A

court may fairly measure a parent's future conduct by her past when determining whether termination is in a child's best interest. *In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.).

## Conclusion

As required, we have reviewed all the evidence. *See In re A.B.*, 437 S.W.3d at 505 (court of appeals must "conduct exacting review of the evidence"). For the reasons discussed, considering all the evidence in relation to the best interest factors in the light most favorable to the court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination was in the best interest of C.V. *See In re K.M.L.*, 443 S.W.3d at 112-13, 116 (legal sufficiency standard). And, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding permits a reasonable factfinder to form a firm belief or conviction that termination was in the child's best interest. *See In re A.B.*, 437 S.W.3d at 502-03 (factual sufficiency standard). Hence, the evidence supporting the court's finding that termination of the mother's parental rights was in the best interest of C.V. is legally and factually sufficient. *See Holley*, 544 S.W.2d at 371-72. We accordingly overrule the mother's appellate issue and affirm the trial court's order of termination.