

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00282-CV

### IN THE INTEREST OF K.C., G.D., G.D., J.D., AND A.D., CHILDREN

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 27769, Honorable Dan Mike Bird, Presiding

December 21, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

After a bench trial, the court signed a July 9, 2018 final order terminating the parent-child relationship between appellant C.C. and his son K.C. Appellee is the Texas Department of Family and Protective Services. On appeal, appellant challenges the legal and factual sufficiency of evidence supporting the three predicate grounds for termination found by the trial court and its finding that termination was in the best interest of K.C.[1]

---

[1] TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(N),(O),(2) (West Supp. 2018).

Finding sufficient evidence supported one of the three predicate grounds found by the trial court, and the court's best interest finding, we will affirm the trial court's order.

## Background

The Department's case for termination concerned five children. P.R. is their mother; appellant is the biological father of K.C. (born October 2009). G.D. is the biological father of the younger four children G.D.-1 (born November 2011), G.D.-2 (born August 2013), J.D. (born January 2015), and A.D. (born November 2016).[2] The court's order terminated the parental rights of all three parents to the five children; only appellant has appealed.

The final hearing was completed in June 2018. Most of the Department's case-in-chief at the hearing focused on termination of the parental rights of the mother and G.D. to the four younger children. The evidentiary record supporting termination of appellant's rights to K.C. was less well developed. Appellant was incarcerated at the time of trial but was present with counsel for trial.[3] He chose not to testify, and the Department did not call him to the stand.

The children's Department caseworker worker testified the Department became involved in the present case[4] in November 2016 when A.D. tested positive for

---

[2] We use these party designations to protect the privacy of the five children. TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

[3] Counsel was appointed for appellant in September 2017. The next month, counsel filed a motion to retain the suit on the court's docket and set a new dismissal date. The court later granted that relief.

[4] The mother testified she began using methamphetamine in 2012. In 2013, the Department removed the four older children after she tested positive for

2

methamphetamine at birth, and the mother tested positive for methamphetamine, amphetamine, and marijuana. The five children were removed from the mother's care to foster care. By the time of trial, the two older children, K.C. and G.D-1, were placed in one home, and the three younger children in another.

The mother, age 26 at trial, testified she smoked marijuana from the age of sixteen, including the time she was pregnant with K.C. The mother and appellant were never married and the inception date of their relationship was not shown. The mother testified she was "with" appellant at the time of K.C.'s birth but their relationship ended six or seven months after the child was born.

Appellant was incarcerated in 2012[5] for the offense of "assault family violence-impeding circulation," and was in prison at the time of the final hearing. Appellant's apparent release date is 2020.

K.C. was eight years old at the time of trial. Asked if appellant and K.C. "ever met," the mother responded, "[m]aybe once or twice." Her statements indicate those occasions would have been shortly after the child's birth. There is no evidence of any other contact between appellant and K.C. Appellant's paternity was adjudicated in the court's termination order.

_____

methamphetamine at the birth of G.D.-2. The caseworker testified the mother admitted using marijuana throughout her pregnancy with G.D.-2 and methamphetamine on the day of his birth. The children were subsequently returned to the mother several months later where they remained until the 2016 removal at the inception of the present case.

[5] This fact was not developed during the presentation of the parties' evidence but was not disputed. Under questioning by the court, a discussion among the court, appellant's counsel, and appellant established that appellant was incarcerated in 2012 with an expected "discharge" date of 2020.

During his interview in chambers at trial, K.C. told the judge he did not know appellant and could not remember having met him. K.C.'s foster mother testified K.C. knows he has a biological father but does not know his name. The caseworker testified to the effect that appellant had not sent K.C. letters or initiated any other form of communication, or provided any tangible support of the child in foster care.

Analysis

In his first issue appellant argues the evidence was legally and factually insufficient to support any of the three predicate grounds for termination found by the trial court.

The Family Code permits a trial court to terminate parental rights if the Department establishes one or more of the statutory grounds for termination, and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014). Because the proceeding terminates fundamental liberty interests of the parent, the evidence must be clear and convincing to justify termination. *Id.* (citing *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013)). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d 17, 25-26 (Tex. 2002).

Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d at 266. We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* But we take into account undisputed facts that do not support the

finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we must defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

When reviewing the factual sufficiency of the evidence supporting a termination order, we consider the evidence as a whole in a neutral light, and determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

In its brief, the Department responded only to appellant's (N) ground challenge. *See In re A.V. and J.V.,* 113 S.W.3d 355, 362 (Tex. 2003) (only one statutory predicate ground finding necessary to support termination of parental rights when there is also a finding that termination is in child's best interest). The (N) ground for termination requires proof that the parent constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months, and (i) the Department has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and

5

(iii) the parent has demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE ANN. § 161.001(b)(1)(N).

In this court, appellant challenges only the sufficiency of evidence supporting the finding that the Department made reasonable efforts to return K.C. to appellant. Appellant effectively concedes the proof establishes he constructively abandoned K.C., that K.C. has been under the Department's managing conservatorship for the required period of time, and that appellant has not regularly visited or maintained significant contact with his son and has demonstrated an inability to provide him with a safe environment.

Appellant's argument acknowledges the caseworker testified she wrote appellant concerning his paternity but never received a response, and stated that, to her knowledge, appellant had not been "working services." Appellant then contends, "[h]owever, there is nothing presented at trial to indicate whether a service plan had been created, whether the caseworker had sent [a]ppellant a service plan, whether she had contacted him concerning relative placement or otherwise made any effort to prevent termination." We disagree with this characterization of the evidence the trial court heard.

With regard to the fact issue whether a service plan was created for appellant, our review of the record reveals testimony from which the court could have determined that the caseworker prepared a service plan for appellant. On direct examination by the Department, she answered "yes" when asked if she prepared a service plan for "these

parents."[6]  At another point in her testimony, she made reference to a condition of the plan.[7]

Appellant's service plan, however, was not admitted into evidence.  Nor, unlike the plans prepared for the mother and G.D., does the plan appear even in the clerk's record on appeal.  Nor was there testimony of the services appellant was to perform in prison under his plan.  The caseworker merely answered "not to my knowledge" when asked whether appellant "was working any services while incarcerated."[8]  For those reasons, we can agree with appellant that this record does not show the degree of implementation of service plan terms typically seen in cases in which the Department relies on a service plan for its reasonable efforts.  *See, e.g., In re N.R.T.,* 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (noting implementation of a service plan by the Department is ordinarily considered a reasonable effort to return a child to its parent); *In re M.V.G.,* 440 S.W.3d 54, 60 (Tex. App.—Waco 2010, no pet.) (State's preparation and administration of service plan as evidence of reasonable efforts); *In re K.J.T.M.,* No. 06-09-00104-CV, 2010 Tex. App. LEXIS 3057, at *12 (Tex. App.—Texarkana Apr. 27, 2010, no pet.) (mem. op.) (implementation of service plan generally considered reasonable effort).

---

[6] Throughout the testimony, it often is unclear from the cold record whether references to "these parents" refer to the mother and G.D. or to all three parents.  In this instance, the trial court could have understood the caseworker to have included appellant.

[7] Although not mentioned in the testimony, a permanency report in the clerk's record indicates the service plan was sent to appellant in prison in July 2017.

[8] Elsewhere in her testimony the caseworker gave the same response when asked if appellant had taken "batterer's intervention," "anger management," and counseling.  The questions were not asked, however, in connection with particular requirements of a service plan.

The scant evidence of implementation of a service plan, however, is not the only evidence showing the Department's efforts to encourage appellant toward responsible parenthood. Appellant's argument disregards the caseworker's testimony regarding eight separate occasions on which she provided appellant packets containing parenting materials. The caseworker testified that some time after the initiation of the current proceeding in November 2016 she learned appellant was being held in jail in Childress County, Texas.[9] On arrival at the jail, she learned he had been transferred to another jail but was not "able to locate him" until July 2017. At that time, she said, she began writing appellant. Asked how he responded to her contact with him, she said, "[h]e didn't." In further testimony, the caseworker said that on eight subsequent occasions she sent appellant letters providing "updates" on his son's welfare ("how he's doing in the home") and his "medical." The letters also included articles on parenting a child of K.C.'s age, which appellant was to summarize and return to the Department. Asked the procedure, the caseworker said, "[h]e reads a parenting article and then summarizes what he's read and sends it back in the prepaid envelop[e] I provided." She told the court appellant never responded to any of her correspondence. Although the evidence does not contain copies of the caseworker's correspondence, her description of its contents was clear. The Department's brief characterizes the eight packets of materials as "efforts to implement services," and we think the characterization is fair.

The Department argues the evidence of its efforts to locate appellant after he was served with citation as an alleged father, its correspondence to appellant regarding his

---

[9] The return of service in the clerk's record indicates appellant was served with the Department's petition at the residence address listed in the petition in Quanah, Texas.

paternity, its development of a service plan, its regular updates on K.C.'s health and progress in foster care, and its efforts on eight occasions to implement parenting services through correspondence, provide clear and convincing evidence it made reasonable efforts to enable appellant to establish a relationship with K.C. and maintain his status as parent.[10]  To that list we would add the evidence the Department in this case took the uncommon step of initiating mediation some six months before the final hearing.

After review of the entire record, we find the trial court reasonably could have resolved disputed evidence in favor of its finding that the Department made reasonable efforts to return K.C. to appellant, and that the evidence, considered as a whole in a neutral light, permitted the court reasonably to form a firm belief or conviction of the truth of its finding.  *See In re C.H.,* 89 S.W.3d at 25.  Because the evidence is thus factually sufficient, it necessarily is legally sufficient.  Appellant's first issue is overruled.

By his second issue, appellant challenges the legal and factual sufficiency of evidence supporting the court's finding that termination was in K.C.'s best interest.  In assessing the trial court's best-interest determination, we consider the factors set out in *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976).[11]  While the *Holley* "listing is by no means

---

[10] The Texarkana court's statement in *In re K.J.T.M.,* 2010 Tex. App. LEXIS 3057, at *12-13 n.12 has application here.  The court there noted, "[t]he concept of a 'reasonable effort' to return the child is effectively a sliding scale, depending on the situation."  It went on to state that the record before it contained "evidence to support a finding that the State made a reasonable effort to return the child by attempting services which could have led to a change in [the respondent father's] attitude and behavior."

[11] The *Holley* factors are:  (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interests of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7)

exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[12] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). A court may fairly measure a parent's future conduct by his past when determining whether termination is in a child's best interest. *In re C.V.,* 531 S.W.3d 301, 308 (Tex. App.— Amarillo 2017, pet. denied) (citing *In re O.N.H.,* 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.)). The best interest analysis focuses on the best interest of the child, not that of the parent. *In re C.V.,* 531 S.W.3d at 307.

The evidence shows K.C. does not have a relationship with appellant. By all indications he would not know appellant on sight. It was undisputed that appellant has made no tangible effort of any sort to reach out to his son. Meanwhile, K.C. is doing well and is happy with his foster parents. In the trial court's interview of K.C. in chambers, the

---

the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[12] *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

child expressed his unequivocal desire to remain with his foster family. He is free to remain in their home until a suitable adoptive family is located but, testimony showed, they may consider adoption. Another family also has expressed interest in adopting K.C. and G.D.-1, with whom he has a close bond. Appellant's term of incarceration for a crime of violence will end no sooner than 2020. Although present at the final hearing, appellant chose not to provide the court any information through testimony. We are therefore not informed of matters critical to the best-interest determination such as appellant's rehabilitation or his plans for family and employment after his release. How he would intend to parent K.C. is unexplained. Because appellant performed no services, nothing is known of his parenting abilities, aside from his apparent apathy.

Whether viewed in a light most favorable to the judgment or a neutral light, the evidence is sufficient to support the trial court's finding that termination of appellant's parental rights with K.C. was in the child's best interest. Accordingly, we overrule appellant's second issue.

## Conclusion

Having overruled both appellant's issues on appeal, we affirm the trial court's order.

James T. Campbell
Justice