

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00430-CV

IN THE INTEREST OF H.R.M., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 71,784-L1, Honorable Jack M. Graham, Presiding

March 22, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellee the Texas Department of Family and Protective Services sought termination of the parental rights of appellant, "the mother" to her daughter, H.R.M.[1] At final hearing, the case was tried to the bench and a final order terminating the mother's parental rights to H.R.M., appointing the Department H.R.M.'s permanent managing conservator, and naming H.R.M.'s biological father, R.O., her possessory conservator was signed November 8, 2018. The mother appealed, challenging only the trial court's

---

[1] We use these party designations to protect the privacy of the child. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

best-interest finding.  We will overrule the mother's issue and affirm the final order of the trial court.

## Background

The predicate grounds found by the trial court to warrant termination of the mother's parental rights were endangering conditions, endangering conduct, conviction for endangering a child, termination of parent-child relationship to another child, and failure to comply with a court order establishing actions necessary for return of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(L),(M), & (O) (West Supp. 2018).

The mother was age thirty-eight at the time of final hearing.  Evidence showed her parental rights to three other children were terminated through Department suits in 2003, 2007, and 2008.  In the 2003 and 2008 cases, termination was based on findings the mother was responsible for conduct or conditions endangering to the child.  The mother testified at the final hearing in the present case that her alcohol use was a factor in those terminations.

In 2006, the mother received a probated sentence for aggravated robbery.  She testified that while on probation she was provided inpatient treatment for abuse of alcohol and spray paint.  Her probation was later revoked and she was imprisoned for five years. After her release, she first used methamphetamine.

The Department's case concerning H.R.M. began in March 2017, when it received a referral alleging substance abuse and family violence in the home of the mother and her boyfriend, J.M.  Three-month-old H.R.M. lived with the mother.  J.M. was initially

identified as H.R.M.'s alleged father, but later testing established the child's biological father is R.O.

Because of a domestic violence incident involving the mother and J.M., the mother was staying in a local motel when contacted by a Department investigator. The mother agreed to hair strand drug screens for herself and H.R.M.; the results for the mother and H.R.M. were positive for amphetamine and methamphetamine. The investigator testified in her opinion H.R.M.'s drug level was high. H.R.M. was removed from the mother's care. At the time of removal the mother was pregnant and gave birth to R.M. in October 2017. J.M. is the father of R.M.

Because she exposed H.R.M. to methamphetamine, the mother was indicted for the state jail felony offense of endangering a child in November 2017.[2] Under the terms of a plea agreement she received an eighteen-month sentence in a state jail, probated for two years.

Final hearing evidence showed in June 2018 the mother worked for a beauty supply store but was terminated because she was not dependable. She had previous experiences working at a motel and at a restaurant. At final hearing, the mother testified she was seeking a job and in the meantime was cleaning houses.

The caseworker handling H.R.M.'s case testified that the mother completed court-required services, had housing and employment, and received unsupervised visitation

---

[2] *See* TEX. PENAL CODE ANN. § 22.041(c) (West 2011). The indictment charged the mother with knowingly placing H.R.M. in imminent danger of death, bodily injury, or physical or mental impairment by possessing methamphetamine in such proximity or with such accessibility to the child that an analysis of the child's hair indicated the presence of methamphetamine in the child's body.

with H.R.M. The caseworker described the mother's performance to that point as "awesome." But then the mother missed four consecutive appointments for visits with H.R.M.

Evidence showed the mother relied on her grandmother for transportation and other support. When the grandmother was unable to provide transportation because of an accident, the mother missed visits in July 2018, leading to the involvement of a Department supervisor and an investigator.

The supervisor testified she personally contacted the mother at her home and found her "real fidgety," causing her to suspect drug use. She said the mother offered to relinquish custody of H.R.M. after being told she would have to take a drug screen.

When the mother and the infant R.M. were drug-tested, results for both were positive for amphetamine and methamphetamine. The investigator said the results for R.M. showed a high level of methamphetamine, indicative of daily exposure. R.M.'s test results showed a numerically higher concentration of the drug than the mother's results. The mother attributed the child's high level to use by an overnight guest in their home.

R.M. was removed from the mother to the Department's custody. The mother accounted for her relapse into methamphetamine use by explaining to the caseworker that the grandmother was no longer her "support system" and she lost the help of R.M.'s babysitter. As the caseworker put it, "everything just fell apart," and the mother relapsed.

There was evidence of the mother's plans to enter inpatient drug treatment, of her enrollment in a program provided by the Amarillo Council on Alcohol and Drug Abuse, of her attendance of NA and AA meetings, and of her completion of a domestic violence

4

support course. The mother testified she had purchased a car with her income tax refund and was working to obtain a driver's license. She placed into evidence copies of the vehicle title, her certificate for the domestic violence support course, and an NA attendance log.

On cross-examination, the mother acknowledged H.R.M. had been in the Department's care since March 2017, and she was not ready for H.R.M. to come home. When asked how much longer H.R.M. should have to wait for the mother, the mother responded, "I don't know." At the final hearing the mother's caseworker testified that the Department has placed H.R.M. and R.M. together.

The caseworker recommended termination of the mother's parent-child relationship with H.R.M. because, she said, without a child in the home the mother's H.U.D. assistance was in jeopardy, the mother did not have steady employment and stable income, her grandmother was no longer available for support, and because the mother relapsed when "things fell apart" it would not be in H.R.M.'s best interest to place her where the possibility of a future relapse was uncertain.

The trial court rendered judgment terminating the mother's parental rights to H.R.M. finding that decision was in the child's best interest and the mother had violated the five previously noted predicate grounds for termination. This appeal followed.

Analysis

The mother does not challenge the sufficiency of the evidence supporting any of the trial court's predicate ground findings. She argues, however, there was no evidence or at least factually insufficient evidence to support the trial court's best-interest finding.

The standards for appellate review of the proof presented to meet the Department's burden of clear and convincing evidence are described in *In re K.M.L.,* 443 S.W.3d 101 (Tex. 2014) and *In re K.V.,* No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d 17, 25-26 (Tex. 2002). As factfinder, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *In re H.E.B.,* No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.).

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976).[3] While the *Holley* "listing is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[4] "The absence of evidence about some of these considerations would not preclude a fact-finder from

---

[3] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interests of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[4] *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d at 27. In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).

We do not question the sincerity of the mother's final hearing request for another chance to parent her daughter. But the trial court's obligation was not to serve the mother's best interest but that of H.R.M. *In re C.V.,* 531 S.W.3d 301, 307 (Tex. App.—Amarillo 2017, pet. denied).

We begin by noting that the unchallenged evidence of the mother's commission of endangering conduct, her criminal conviction for endangering a child, and termination of her parental relationship to another child on an endangering conditions or endangering conduct finding strongly supports the court's best-interest finding. *See In re C.H.*, 89 S.W.3d at 28 (same evidence may be probative both of predicate grounds and best interest).

Evidence also showed a years-long pattern of conduct by the mother characterized by poor choices, use of illegal drugs, dysfunctional relationships, and parenting struggles. For the best-interest determination, the court may consider evidence of a parent's past conduct to be predictive of her future conduct. *In re O.N.H.,* 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). Despite her instruction in coping skills during the present and previous Department cases, the mother relapsed into methamphetamine use

at the threshold of her reunification with H.R.M. And another child, this time R.M., was removed.

The mother acknowledged she found it easier to perform court-ordered requirements after R.M. was removed. The court had reason to doubt the mother's stated confidence in her ability to "handle" having her children back with her. Despite the caseworker testimony that before her relapse, reunification was imminent, the court heard no proof the mother had a concrete, dependable plan to provide for her daughter's well-being. The court could have credited the evidence that the mother lacked current employment and stable income, had an inconsistent employment history, and did not have a driver's license. The mother's housing arrangement could have appeared uncertain to the court following R.M.'s removal. And, when a time of stress came, the mother turned not to those who were willing to provide assistance but to illegal drug use in the presence of her infant son.

The mother emphasizes her service-plan successes and her determined plans to obtain substance-abuse treatment after relapse. While these accomplishments are laudable, notwithstanding the trial court's subsection (O) finding, they are limited and of recent origin. The court was not required to see them as offsetting the negative history this record presents. *See In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) ("[w]hile recent improvements made by [the parent] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices").

8

## Conclusion

Considering all the evidence of the best-interest factors in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination of the mother's parental rights was in the child's best interest. *See In re K.M.L.*, 443 S.W.3d at 112-13, 116 (legal sufficiency standard). And, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding also permitted a reasonable factfinder to form a firm belief or conviction that termination was in H.R.M.'s best interest. *See In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard). Hence, the evidence supporting the court's finding that termination of the mother's parental rights was in H.R.M.'s best interest was legally and factually sufficient. *See Holley,* 544 S.W.2d at 371-72. We accordingly overrule the mother's appellate issue and affirm the trial court's final order of termination.

James T. Campbell
Justice