

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00108-CV

IN THE INTEREST OF K.C., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 92,108-E-FM, Honorable Douglas R. Woodburn, Presiding

September 8, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

In this accelerated appeal, Mother seeks reversal of the district court's judgment terminating her parental rights to five-year-old K.C.[1]  Appellee is the Texas Department of Family and Protective Services.  Through a single issue, Mother argues the evidence was insufficient to support the district court's finding that termination of her parental rights was in the best interest of K.C.  Finding the evidence sufficiently supports the challenged finding, we affirm the judgment of the district court.

---

[1] To protect the child's privacy, we will refer to appellant as "Mother" and the child by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8 (a), (b).  The parental rights of K.C.'s alleged father were terminated by the associate judge.  The father neither sought de novo review nor appealed that decision.

## Procedural Background

Final hearing of the Department's suit was to the bench before the associate judge. Following trial, the associate judge signed an order granting Mother possessory conservatorship of K.C., effectively denying the Department's request to terminate Mother's parental rights. The Department sought de novo review of the associate judge's findings, including the finding that it would not be in the best interest of K.C. to terminate Mother's parental rights.

At the de novo hearing, the district court received no additional testimony or evidence, but considered the record from the hearing before the associate judge pursuant to TEX. FAM. CODE ANN. § 201.015(c). The district court set aside the associate judge's decision, finding that Mother violated five predicate grounds warranting termination and that termination of parental rights was in K.C.'s best interest. The district court appointed the Department to serve as K.C.'s permanent managing conservator. This appeal followed.

## Factual Background

The Department initiated proceedings to remove K.C. in the late summer of 2018 after Mother had used illegal drugs—including cocaine, oxycodone, amphetamines, methamphetamines, and marihuana—resulting in her and her children's expulsion from a Salvation Army living facility. Mother admitted that she was "actively in [her] addiction" at that time. The Department also expressed concern that Mother did "not have adequate housing or employment to meet the minimum daily needs of her children." Mother "reported her home life started to crumble. She reported she lost her car, house, and was

2

in a domestic violence relationship."  Her children also tested positive for the presence of illegal drugs, including amphetamines, methamphetamines, and cocaine.

This was not Mother's first experience with abusing drugs and suffering the consequences of her addictive conduct.  Mother had used illegal drugs as early as high school and had been abusing cocaine for fourteen years.  When she was in Arizona, four other children had been removed after being born addicted to cocaine; her parental rights to those children were eventually terminated.

In October 2018, Mother agreed to maintain a drug-free lifestyle pursuant to a family service plan.  She did not comply.  She admitted continuing to use drugs through January 2019.  Hair follicle drug testing indicates additional positive drug tests in February, May, and July 2019, though Mother argues urinalysis never reported a positive result.  Stacey Brown, the Department caseworker handling K.C.'s case, offered one potential explanation for the inconsistency in test results:  Mother claimed knowledge of how to "pass" a urinalysis drug test.[2]

Although Mother completed twelve counseling sessions with Dr. Stephen Jennings as agreed under the family service plan, he remained of the opinion that Mother should not be given unsupervised visitation with young children for any length of time.  Dr. Jennings testified that when Mother was presented with follicle test results indicating continued drug use, she blamed the testing company for errors and suggested not to know how drugs entered her body.  Dr. Jennings opined that Mother was not always being truthful with him when denying drug use and recommended Mother receive inpatient drug

_____

[2] On another occasion, Mother shaved her head, presumably to frustrate hair follicle drug testing.

3

treatment. Ultimately, Jennings agreed that permitting Mother to have unsupervised access would put young children "in a very dangerous environment."

In December 2019, the same month the hearing began before the associate judge, Mother completed an eighteen-week "Apple" program, which is designed for drug education but not treatment. Mother testified she had attended support groups "seven or eight months straight, two or three times a week," and was on step seven of a twelve-step program. Nevertheless, in the same month as her completion of the Apple program, the evidence suggests that Mother failed to participate in a hair follicle drug test. She had agreed that her failure to take a drug test on the date requested would be considered a "positive" result with the Department and would constitute a failure to follow the family service plan.

Mother also had an inconsistent employment history, holding five or six jobs between October 2018 and January 2020. Mother was terminated from one job for using a patient's credit card to purchase gasoline, causing an Adult Protective Services case to be opened. Mother held no job for more than six months. At the time of final hearing, Mother worked in a fast food restaurant while enrolled in a medical-assistant training program. Mother testified that beginning pay for a medical assistant would be in the range of $17.00 to $18.00 per hour. She planned to work twenty hours per week if she was able to regain possession of her children.

Mother lived in a two-bedroom apartment with her nineteen-year-old daughter, C.C. Rent was $750 per month, paid by her ex-husband, with assistance from C.C. Mother owned an operable vehicle.

4

Analysis

Through a single issue, Mother argues the evidence was legally or factually insufficient to support the trial court's best-interest finding.

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re N.G.,* 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE ANN. § 101.007).

The standards for reviewing the evidence on appeal are different from those used as a part of the district court's de novo review. Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d at 266. We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we must defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder reasonably could have found to be clear and convincing. *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

In assessing the trial court's best-interest determination, we compare the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).[3] However, the *Holley* "listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[4] "The absence of evidence about some of these considerations [will] not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence [is]

---

[3] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[4] *See In re R.R., 209 S.W.3d* 112, 116 (Tex. 2006) (citing Family Code Section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d at 27. In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.,* 89 S.W.3d at 27).

Mother argues she made progress in improving her life and that the Department failed to meet the *Holley* factors. Indeed, the evidence shows that Mother made progress toward the goal of completing job training and possibly entering stable employment in the future. Mother's housing appeared to have improved, and she successfully completed the Apple program. She had plans for childcare and babysitting that would accommodate her school and work schedules. Mother remained a participant in a twelve-step program and attended support groups. Although K.C. was placed in a foster home in a distant city, Mother kept monthly in-person visitation and had weekly contact with her daughter via Skype.

However, we cannot say that this proof of progress before the final hearing overcame the district court's ability to form a firm belief or conviction that termination of her parental rights was in K.C.'s best interests. *In re C.V.*, 531 S.W.3d 301, 306 (Tex. App.—Amarillo 2017, pet. denied). Of significance, the trial court's several predicate ground findings, unchallenged on appeal, provide substantial support for the court's best-interest finding.[5] *See In re C.H.,* 89 S.W.3d at 28 (same evidence may be probative both of predicate grounds and best interest); *In re J.J.L.,* 578 S.W.3d 601, 609 (Tex. App.—

---

[5] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) and (E) (endangering conduct), (M) (parental rights to another child terminated for endangering conduct), (O) (failure to complete court-ordered service plan), (P) (use of controlled substance that endangered a child and failure to complete a court-ordered treatment program or continued drug abuse after completing such a treatment program) (West Supp. 2019).

7

Houston [14th Dist.] 2019, no pet.) (noting an appellate court is bound by unchallenged findings unless the contrary is established as a matter of law or no evidence supports the finding) (citation omitted).

Moreover, the evidence suggesting Mother's post-removal improvement must be juxtaposed with Mother's bleak history of cocaine addiction and a concomitant chaotic lifestyle. *See In re O.N.H.,* 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (noting a court may properly measure a parent's future conduct by her past when determining whether termination is in a child's best interest); *In re A.C.B.,* 198 S.W.3d 294, 296, 299-300 (Tex. App.—Amarillo 2006, no pet.) (notwithstanding post-removal improvement and evidence of compliance with service plan, prior endangering conduct could support termination in best-interest finding). This included the termination of her parental rights to four other children, each born addicted to cocaine, and Mother's past willingness to rely on cocaine in times of stress. Mother continued illegal drug use and had difficulty maintaining stable employment while this suit remained pending, and she declined inpatient drug treatment despite Dr. Jennings' recommendation that Mother seek such treatment in light of her positive drug test history.

Finally, the evidence before the district court permitted a finding that Mother continued drug use through as proximate as one month before the final hearing. Evidence of Mother's drug history led Jennings to opine without objection that Mother should not have unsupervised visitation with young children due to the potential for danger.

Considering all the evidence of the best-interest factors in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm

belief or conviction that termination of Mother's parental rights was in the best interest of K.C. *See In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014) (legal sufficiency standard). And, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding also permitted a reasonable factfinder to form a firm belief or conviction that termination was in the best interest of K.C. *See In re A.B.,* 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard). Thus, legally and factually sufficient evidence supported the court's findings that termination of Mother's parental rights was in the best interest of K.C. *See Holley,* 544 S.W.2d at 371-72. We accordingly overrule the mother's appellate issue.

Mother also makes a passing argument suggesting that she and her trial counsel were not notified of the de novo hearing. *See* TEX. FAM. CODE ANN. § 201.015(d) (West 2020) (directing notice to be provided under TEX. R. CIV. P. 21a). We find the assertion to be without merit. The Department's request for de novo review contains a certificate of service signed by counsel for the Department and showing Mother's trial counsel was served electronically. This certificate is prima facie evidence of the fact of service. TEX. R. CIV. P. 21a(e). Further, the record contains no complaint to the district court by Mother or her attorney about any defect in service or lack of notice. The reporter's record indicates that Mother's attorney was involved in another matter the day of the final hearing. Counsel for the Department informed the court that she had spoken with the Mother's attorney, that he did not oppose the court reviewing the record, and that "obviously, he didn't want [Mother's] rights terminated." If Mother believed that representation to the district court was inaccurate, she had other opportunities before this appeal to have raised it. TEX. R. APP. P. 33.1.

Conclusion

We affirm the final order of the trial court.


Lawrence M. Doss
Justice