**Affirmed and Memorandum Opinion filed April 25, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00985-CV

---

## IN THE INTEREST OF J.J.W., C.T.Y., C.E.Y., C.W.Y., AND A.J.K., CHILDREN

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Cause No. 2017-04136J

---

## MEMORANDUM OPINION

The issues in this case involve whether the trial court's findings to terminate a mother's parental rights are supported by legally- and factually-sufficient evidence. This accelerated appeal arises from a final order in which, after a bench trial, the trial court terminated the parental rights of S.A.K. (Mother) with respect to her children, J.J.W. (John), C.T.Y. (Chip), C.W.Y. (Colin), C.E.Y. (Carlos) and A.J.K. (Ana),[1] and appointed the Department of Family and Protective Services to

---

[1] To protect the minors' identities, we have not used the actual names of the children, parents, or other family members. *See* Tex. R. App. P. 9.8.

be the children's sole managing conservator. *See* Tex. Fam. Code Ann. § 109.002(a-1).[2]

In three issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate grounds of endangerment, and that termination is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2). We affirm.

## I. BACKGROUND

### A. Pretrial Proceedings

#### 1. Pretrial Removal Affidavit

In March 2017, the Department received a referral alleging neglectful supervision of John, Chip, Colin, and Carlos by Mother. The report stated that Mother left the children with their maternal grandmother two days earlier. When Mother returned she appeared to have been using either methamphetamine or cocaine. It was reported that Mother commonly left for a period of time and returned "all drugged up." Mother rarely bathed the children, which caused some of them to develop boils. About 10 days earlier, Colin had an ear infection that caused his ear to swell and bleed. When someone suggested Mother take Colin to the doctor, she rebuffed the individual with an expletive. Carlos was hospitalized for a staph infection, which allegedly was caused by a mosquito bite that was infected most likely with his own feces due to Mother's failure to regularly change his diaper.

Four months later, the Department received a second referral alleging neglectful supervision of Ana by Mother. The reported stated that Mother tested positive for cocaine the day before when Ana was born. Mother admitted to some

---

[2] The children's fathers' parental rights were also terminated. The fathers have not appealed the termination of their parental rights.

alcohol and cocaine use approximately one month before Ana's birth.

## 2.    The Investigation

Two days after the initial referral, the Department caseworker met with Mother at the Walker County Jail. Mother was arrested due to outstanding warrants on speeding tickets and taken to jail. Mother admitted cocaine use eight years earlier but denied recent use. Mother agreed to work with Family Based Safety Services (FBSS) and take a drug test after she was released from jail. Two weeks later Mother refused to provide a specimen for a drug test.

Mother reported that she and her children lived with the paternal grandmother. When a Department caseworker went to the address given by Mother the caseworker learned that the paternal grandmother (Grandmother) lived in the apartment, but Mother and the children did not live there. The apartment was part of a senior community and there were no children living there. The investigator looked for Mother and the children at the Star of Hope mission but was unable to locate them.

Approximately one month later, a month before Ana was born, Mother called her sister, told her sister she was in active labor, and asked her sister to go to the Star of Hope mission and pick up the older children and bring them to Mother. When Mother's sister met Mother, she noted that Mother was pregnant but did not appear to be in labor. Mother was homeless and reported that she had not made enough money begging that day to get a motel room for the children and her. Mother gave the four older children to her sister, who reported that the children smelled of urine and feces.

Mother's sister later reported that the children were living with Grandmother, but Grandmother told the caseworker she had no locating information for Mother or John's father. Grandmother reported that her son is the father of Chip, Colin, and

3

Carlos. He was unable to care for the children, according to Grandmother, because he was "unstable and on drugs."

Mother has another child, C.K. (Chris), who has lived with Cynthia Dixon since he was one year old. Mother's parental rights to Chris are not at issue in this case. Dixon reported that five years earlier Mother was arrested for prostitution and possession while John was with her at a motel.

### 3.    Department History

One year earlier, the Department received a referral for physical abuse of the children by C.Y., the biological father of Chip, Colin, Carlos, and Ana. John had multiple minor injuries to vital body areas caused intentionally by C.Y. (Father).[3] Three days later John had older brown visible marks to his upper left and right thigh area. The marks appeared to be strap marks approximately four inches long. John had another mark on his left leg that appeared to be a hand print. John reported that the injuries were caused by Father when Father became angry because John would not pick up his toys. Disposition of this referral was listed as "unable to determine."

### 4.    Criminal History

Mother's criminal history dated back to 2002 and is listed on the removal affidavit as follows:

| Offense | Date | Disposition |
|---|---|---|
| Robbery | 05/20/2002 | Held |
| Possession of Controlled Substance (<lg) | 06/12/2002 | 9-months confinement |
| Burglary of Habitation | 12/08/2003 | Dismissed on state's motion |

---

[3]It appears from the record that John referred to C.Y. as his father.

| Offense | Date | Disposition |
|---|---|---|
| Prostitution | 09/07/2004 | 10-days confinement |
| Prostitution | 10/05/2004 | 30-days confinement |
| Manufacturing and Delivery of Controlled Substance (<lg) | 12/02/2004 | 7-months confinement |
| Possession of Controlled Substance (<lg) | 12/02/2004 | 7-months confinement |
| Theft of Property $50 < $500 | 01/24/2005 | 8-days confinement |
| Criminal Trespass, Misdemeanor | 11/15/2005 | 15-days confinement |
| Criminal Trespass, Misdemeanor | 12/29/2005 | 30-days confinement |
| Robbery | 02/08/2006 | Dismissed due to missing witness |
| Prostitution | 06/07/2006 | 90-days confinement |
| Prostitution | 07/20/2006 | 180-days confinement |
| Manufacturing and Delivery of Controlled Substance (<1g) | 10/25/2006 | Dismissed due to conviction of co-defendant |
| Possession of Controlled Substance (<1g) | 05/01/2007 | 3-days confinement |
| Possession of Controlled Substance (<lg) | 11/28/2007 | 180-days confinement |
| Manufacturing and Delivery of Controlled Substance (<1g) | 09/09/2008 | Dismissed due to conviction of co-defendant |
| Unauthorized Use of a Motor Vehicle | 10/02/2008 | 7-months confinement |
| Prostitution | 05/19/2009 | 180-days confinement |
| Prostitution | 05/04/2010 | 8-months confinement |

| Offense | Date | Disposition |
|---|---|---|
| Theft of Property $50 < $500 | 05/11/2011 | 20-days confinement |
| Prostitution | 09/28/2011 | 180-days confinement |

## B.    Final Hearing

The hospital records of Mother and Ana were admitted into evidence without objection. Ana's records reflect that she was a "newborn affected by maternal use of cocaine." The records reflect that Ana's urine was positive for cocaine. The records further note that the newborn displayed "normal sleep/wake states including quiet sleep and active sleep and awake states including drowsy, quiet alert, active alert and crying."

Elizabeth Bolling, the supervising caseworker, testified that the children first became involved with the Department in March 2017 when Mother "disappeared." The Department was unable to locate Mother until she gave birth to Ana. At the time of Ana's birth, both Mother and baby tested positive for cocaine. At that time Mother did not have a place to live. Ana required additional medical care due to being born with cocaine in her system.

Four months later John was interviewed at the Children's Assessment Center. John told the interviewer that while he was in a hotel with Mother, he saw on television "different genitals of people that were touching each other." John also revealed that he saw Mother and Father fighting with each other. John reported that Father would hold a blanket over his head and "make us not breathe for a lot of minutes." John reported that Chip, his four-year-old brother, found Father's gun, pointed it at him and pulled the trigger. John was not hurt because the gun was not loaded.

6

After the first hearing in the trial court, Mother tested positive for cocaine, benzoylecgonine, and Norco, an opioid. Mother's urine tests were negative in October, November, and December 2017. Her hair follicle level in November 2017 had decreased, but she continued to test positive for benzoylecgonine and cocaine. Mother submitted to drug tests in January, February, May, June, and August 2018, and each test was negative. During those months Mother reported that she was living in a hotel with Father and the maternal grandmother after a recent hurricane. Mother was working part-time, providing home health care for the maternal grandmother. Bolling also testified to mother's extensive criminal history.

Father submitted to drug testing with mixed results. Father had positive results for cocaine and benzoylecgonine. Mother was told by the Department that the children would not be returned to her if she continued to live with Father, because he was using illegal drugs. Bolling further testified to Father's extensive criminal history. It was not in the children's best interest to place them with Mother while she continued to live with Father.

At the time of the final hearing, Mother had moved out of the hotel but continued to live with Father. Mother was given a family service plan and ordered to comply with the tasks in the plan. Mother completed her psychosocial assessment and followed all recommendations. Mother completed parenting classes, participated in permanency conferences, provided verifiable proof of income, and submitted to random drug testing. Bolling testified, however, that Mother did not demonstrate that she understood the role her actions played in the Department's need to remove the children. Bolling clarified that Mother was confrontational when told Father should not continue to live in the home. The children's maternal grandmother, who was also living in the home, had a previous conviction for possession of a dangerous drug as well as reports of domestic violence.

7

At the time of the final hearing, the children were living with their aunt who expressed that she could keep the four younger children but was "having some issues" with John. John was causing problems with the younger children and was causing problems at school by displaying aggression toward females. The Department identified a paternal relative as a potential placement for John.

Bolling testified that termination was in the children's best interest due to the parents' criminal history and domestic violence in the home. To her knowledge, the children did not have special physical needs.

The Child Advocate testified that their organization recommended termination of the parents' rights. The Advocate's primary concern was that Father continued to use illegal drugs and continued to live in the home. After the Department mandated that Father move out of the home Mother reported that Father would continue to support her financially, but he was not living in the home. Mother reported that she was dependent on financial support from Father. After Father moved out, the maternal grandmother moved in purportedly to help Mother care for the children. The Advocate observed that the maternal grandmother was confined to a hospital bed and did not move during the Advocate's visit.

Mother reported having participated in a twelve-step program, but expressed to the Advocate that she "never had a problem with drugs." The Advocate was concerned that Mother was not fully committed to sobriety because she had not taken the first step and acknowledged that she was powerless over substances.

The Advocate believed Mother posed a continuing danger to the children because Mother did not have the ability to make rational decisions and understand the seriousness of Father's substance abuse. The fact that Mother continued her relationship with Father caused the Advocate to believe that Mother was continuing to endanger her children.

The Advocate visited the children and reported that they were doing very well. All the children's needs were being met. The children's aunt was willing to become a foster parent and continue to care for the children. The potential placement for John was a paternal aunt who is a licensed vocational nurse and has three children of her own. She is financially stable and receives child support for her children.

Mother testified that she was in jail at the time the children were removed and came into the Department's care. Mother admitted using cocaine while pregnant, but denied using it more than once during her pregnancy. Mother testified that she allowed Father to remain in the home because they were trying "to work on getting [their] children back together." Mother admitted that as part of a twelve-step recovery program she was not to associate with people who use drugs. Mother testified she did not know Father was using drugs until they went to court in the termination proceeding. Mother also denied knowledge of her mother's drug use. Mother testified that she would move her mother out of the house if her children were returned.

Mother testified that before having children, Mother would relapse in her drug use every three months. Mother testified that she used drugs once after John was born and did not use them again until she was pregnant with Ana seven years later. Mother testified that the pornography that John had seen on the motel television was on when they came in the room. Mother quickly changed the channel when she saw what was on the television. Mother testified she had been sober for more than one year before the final hearing. Mother witnessed Father put a blanket on the children's heads, but excused it as play. Mother admitted the play had gone "maybe too far one time." Mother testified the gun that the four-year-old pointed at John was a BB gun.

Mother was committed to sobriety and provided the children with clothes, school supplies, shoes, diapers, and anything they needed while the case was

9

pending. Mother visited the children every weekend. Mother denied any domestic violence.

Mother's Alcoholics Anonymous sponsor testified that she has seen Mother "grow tremendously in our program." The sponsor testified that Mother admitted that she was powerless over alcohol and drugs and had been working the steps of the program, currently on step six.

At the conclusion of testimony, the trial court found clear and convincing evidence that Mother had endangered the children pursuant to section 161.001(b)(1)(D) and (E) of the Family Code. The trial court further found that Mother had been the cause of the children being born addicted to alcohol or a controlled substance pursuant to section 161.001(b)(1)(R). The trial court further found that termination of the parents' rights was in the best interest of the children and that the Department should be appointed temporary managing conservator. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

## II. ANALYSIS

In both Mother's first and second issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding on the predicate grounds of endangerment and being the cause of the children born addicted to a controlled substance or alcohol. In Mother's third issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children.

### A. Standards of review

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of terminating the parental relationship, the law in Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

The heightened burden of proof in termination cases results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g). We review the legal sufficiency of the evidence by considering all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*; *In re D.R.A.*, 374 S.W.3d at 531. However, this does not compel us to disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the

11

clear-and-convincing burden, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (internal quotation marks omitted). We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

In a proceeding to terminate the parent-child relationship brought under Family Code section 161.001, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection 1 of section 161.001(b) and that termination is in the best interest of the child under subsection 2. Tex. Fam. Code § 161.001(b); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

## B. Predicate termination grounds

The trial court made predicate termination findings that Mother had committed acts establishing the grounds set out in Family Code section 161.001(b)(1)(D) and (E), which provide for termination of parental rights if the factfinder finds by clear and convincing evidence that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> . . . [or]
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E).

Only one predicate finding under section 161.001(b)(1) is necessary to

support a judgment of termination when the factfinder also finds that termination is in the children's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will address the trial court's finding of endangerment under subsection E.

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A finding of endangerment under subsection E requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 360. Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A trial court properly may consider actions and inactions occurring both before and after a child's birth and before and after removal to establish a course of conduct. *Id.* at 360–61. "While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone." *Id.* at 360 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *Id.*

Drug abuse and its effect on the ability to parent can present an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345; *see In re S.R.*, 452 S.W.3d at 361. Drug use can endanger a child "when the environment creates a potential for danger that the parent is aware of but disregards." *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

In arguing that the trial court's finding of endangerment is not supported by

clear and convincing evidence Mother acknowledges that she tested positive for cocaine at Ana's birth and tested positive for cocaine, benzoylecgonine, and Norco after her children came into care. Mother points out that she tested negative on all drug tests for the next eleven months.

The trial court is not required to ignore a long history of dependency and abusive behavior merely because the behavior abates as trial approaches. *In re A.F.*, No. 14-17-00394-CV, 2017 WL 4697836, at *9–10 (Tex. App.—Houston [14th Dist.] Oct. 19, 2017, no pet.) (mem. op.); *see also In re J.F.C.*, 96 S.W.3d at 272 (holding parents' extensive history of substance abuse and violence was not rendered legally insufficient by improvements that appeared to render their home safe and loving five months before final hearing); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Mother's attacks on the endangerment findings are largely, if not solely, based on the proposition that she has remained sober while her children have been in the care of others.

To be sure, Mother's successful completion of her family service plan and her recent sobriety are entitled to significant weight. *See In re C.V.*, 531 S.W.3d 301, 305 (Tex. App.—Amarillo 2017, pet. denied). However, evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue. *In re M.G.D.*, 108 S.W.3d at 514.

In *In re M.G.D.*, this court found that a parent's "recent turnaround" and compliance with a service plan are factors a factfinder should consider in a determination of best interest, but these factors are not determinative in a sufficiency review. *In re M.G.D.*, 108 S.W.3d at 514–15. *See also In re J.O.A.*, 283 S.W.3d at 346 (evaluating legal sufficiency of endangering conduct evidence; noting "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"); *In re*

*S.A.W.*, 131 S.W.3d 704, 709 (Tex. App.—Dallas 2004, no pet.) (termination held to be in best interest despite mother's lifestyle improvements and eventual compliance with service plan).

Although the record reflects that Mother completed her service plan and passed drug tests for the eleven months before the final hearing, it also demonstrates that she continued to make decisions in her relationship with Father that endangered the children. Mother dismissed the children's report of abuse by Father and was financially dependent on Father despite knowledge of his illegal drug use and reports of domestic violence. The trial court could have held a firm conviction that, despite Mother's recent sobriety, her endangering conduct was likely to continue. Given the parents' history of illegal drug use and violence, the factfinder was justified in its conclusion that the endangering conduct would continue.

The evidence supports the trial court's finding that Mother endangered the children for almost the entirety of their lives by exposing them to domestic violence and failing to maintain separation from Father who physically abused the children. A parent endangers her children by accepting endangering conduct of other people. *See In re K.K.D.B.*, No. 14-17-00302-CV, 2017 WL 4440546, at *9 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (mem. op.).

Reviewing all the evidence in the light most favorable to the termination finding under subsection E, we conclude that a reasonable factfinder could have formed a firm belief or conviction as to the truth of the finding that Mother endangered her children through her conduct. *See In re J.O.A.*, 283 S.W.3d at 344. In light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the endangerment finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction as to the truth of this termination finding. *See In re H.R.M.*, 209 S.W.3d at 108. As the finder

15

of fact and sole judge of the credibility of the witnesses, the trial court was free to disregard any or all of Mother's self-serving testimony. *See In re S.A.H.*, 420 S.W.3d 911, 927 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We hold the evidence is legally and factually sufficient to support the predicate termination finding under subsection E, and overrule Mother's first issue.

Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection E, we need not review the sufficiency of the evidence to support the subsections D and R findings. *See In re A.V.*, 113 S.W.3d at 362. We overrule Mother's first and second issues.

## C.     Best Interest of the Children

In Mother's third issue she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

There is a strong presumption that the best interest of the children is served by keeping the children with their natural parents. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code § 153.131(b)); *In re D.R.A.*, 374 S.W.3d at 533. However, prompt and permanent placement of the children in a safe environment is also presumed to be in the children's best interest. *In re S.R.*, 452 S.W.3d at 366 (citing Tex. Fam. Code § 263.307(a)). Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the children's best interest. *See id.* The considerations that the factfinder may use to determine the best interest of the children, known as the *Holley* factors, include:

   (1) the desires of the children;
   (2) the present and future physical and emotional needs of the children;
   (3) the present and future physical and emotional danger to the children;
   (4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in promoting the best interest of the children;

(6) the plans for the children by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re S.R.*, 452 S.W.3d at 366; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment"). A best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72; *In re S.R.*, 452 S.W.3d at 366.

In reviewing the legal and factual sufficiency of the evidence to support the trial court's finding on best interest, we are mindful of the fact that the focus in a best-interest analysis is not only on the parent's acts or omissions, but on the nature of the relationship the child has with the parent. *In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012).

### 1. The desires of the children

The children were removed when John was eight years old, Chip was four, Colin and Carlos were three, and Ana was a newborn. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster parents, are well cared for by the foster parents, and have spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

At the time of the final hearing, the children were placed with a maternal aunt.

17

The aunt was willing to keep all four of the younger children and could seek to be named their foster parent. The Department had located a paternal relative who would accept John as a foster placement. Mother presented evidence that she regularly visited the children and they had a bond with her. The Child Advocate and caseworker both testified that the children were well cared for by their aunt and, with the exception of John, were thriving in their aunt's care.

## 2. Present and future physical and emotional needs of the children and present and future physical and emotional danger to them

"Regarding this factor, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs." *In re D.R.A.*, 374 S.W.3d at 533. Establishing a stable, permanent home for a child is a compelling government interest. *Id.* While some children may have extraordinary physical and emotional needs requiring extra care, all children have physical and emotional needs that must be met every day. The record reflects that at the time they came into care the boys needed physical care, such as feeding, diapering, and in Colin's case, medical attention for an ear infection. The aunt is the only caregiver Ana has ever known. Ana, despite being born with cocaine in her system, was healthy and progressing as a normal newborn. Mother was not meeting her children's physical and emotional needs at the time of their removal.

Mother argues that "it remains speculative" whether the aunt will meet the children's future physical and emotional needs. That the children are currently thriving is evidence that the aunt can meet their future needs. *See In re C.G.*, No. 14-18-00412-CV, 2018 WL 4702403, at *5 (Tex. App.—Houston [14th Dist.] Oct. 2, 2018, pet. denied) (mem. op.) (rejecting best-interest challenge of mother who raised speculation argument).

Continued drug use not only may be considered as establishing an

endangering course of conduct, but also that termination is in the children's best interest. *In re B.Z.S.*, No. 14-16-00825-CV, 2017 WL 536671, at *5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.). While Mother maintained sobriety for several months before the final hearing Father continued to test positive for illegal drugs. Mother failed to protect her children from Father, a known drug user. The record further reflects evidence that Father physically abused Mother and the children. Mother claims that she separated from Father before the final hearing, but there was evidence that she continued contact with Father and was dependent on his income for support. While this court may consider a parent's "recent turnaround" as a factor in the best-interest analysis, this factor is not determinative in a sufficiency review. *See In re J.O.A.*, 283 S.W.3d at 346. The record also reflects that Mother's housing situation was not stable. Evidence of a parent's unstable lifestyle also can support the conclusion that termination is in the children's best interest. *In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *10 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.).

The trial court reasonably could have weighed this factor in favor of termination.

### 3. Parental abilities of those seeking custody, stability of the home, or proposed placement, and plans for the children by the individuals or agency seeking custody

These related factors of the parental abilities of those seeking custody, stability of the home, or proposed placement, and plans for the children by the individuals or agency seeking custody compare the Department's plans and proposed placement of the children with the plans and home of the parent seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

Mother argues that the aunt is only willing to keep four of the children and that she wants all of her children returned to her. Mother also argues that she completed her family service plan. Mother admits the current placement of the children is "reportedly is safe, stable, protective and provides a loving environment for the subject children."

A court may consider whether a parent demonstrated willingness to effect positive environmental and personal changes within a reasonable amount of time to address unsafe issues. *See* Tex. Fam. Code Ann. § 263.307(b)(11). To be sure, Mother demonstrated willingness to obtain treatment for her substance abuse and complete the tasks on her family service plan. However, Mother was unable to obtain and maintain employment or maintain stable housing.

This court and others have found sufficient evidence to support a best-interest finding, despite evidence of lifestyle improvements made while a parent's child is being cared for by others. *See In re A.C.B.*, 198 S.W.3d 294, 299–300 (Tex. App.— Amarillo 2006, no pet.) (notwithstanding post-removal improvement and performance of service plan, prior endangering conduct could support termination); *In re M.G.D.*, 108 S.W.3d at 514 ("[E]vidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue"). *See also In re J.O.A.*, 283 S.W.3d at 346 (in evaluation of legal sufficiency of evidence of endangering conduct, noting "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"). In this case, Mother's past behavior and testimony do not indicate that her rehabilitation "will surely continue."

**4. Acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate, and any excuse for the parent's acts or omissions**

Mother left four of her children for several days without telling the adult caring for the children where Mother was going or how she could be reached. Mother continued to use cocaine after her children were removed and during her pregnancy with Ana. Mother's continued pattern of irresponsible conduct reflects that termination is in the children's best interest. The trial court reasonably could have weighed these factors in favor of termination.

Under all the circumstances in this case and applying the applicable *Holley* factors to all the evidence, we conclude that legally- and factually-sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

We overrule Mother's third issue.

## III. CONCLUSION

The evidence is legally and factually sufficient to support the trial court's finding of endangerment as to Mother under section 161.001(b)(1)(E). And, based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating Mother's parental rights and appointing the Department as managing conservator was in the children's best interest so that they could promptly achieve permanency through adoption. *See In re M.G.D.*, 108 S.W.3d at 513–14.

Having overruled each of Mother's issues on appeal, we affirm the final order of termination.

/s/    Charles A. Spain
Justice

Panel consists of Justices Wise, Zimmerer, and Spain.