

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00074-CV

———————————————

IN THE INTEREST OF M.G., A CHILD

---

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-704341-21

---

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellants D.H. (Mother) and S.L.G. (Father) appeal the trial court's judgment terminating their parental rights to their daughter, M.G.[1] In five issues, Mother contends that the evidence is legally and factually insufficient to support statutory grounds for termination. Father's appointed appellate counsel has filed a brief under *Anders v. California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967), asserting that Father's appeal is frivolous. Because we overrule Mother's dispositive issues and because after carefully reviewing the record we agree with Father's counsel that Father's appeal is frivolous, we affirm the trial court's termination order.[2]

## BACKGROUND

In August 2021, the Texas Department of Family and Protective Services (the Department) received a report from John Peter Smith Hospital alleging that Mother—who had just given birth—had untreated mental health issues and was possibly suffering from Intellectual Developmental Disabilities (IDD). The report alleged that Mother was "irate" and unable to care for her newborn child, M.G.

After meeting with hospital staff, the Department's investigator, Nidra Jones, met with Mother and observed her to be "irate" as indicated in the report. Mother

---

[1]To protect the anonymity of the child associated with this appeal, we use a pseudonym to refer to her and her family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]As discussed in greater detail below, although it does not affect the outcome of this appeal, we modify the termination order to remove an unproven predicate-ground finding as to Father. *See* Tex. R. App. P. 43.2(b).

admitted to having mental health issues but was unable to tell Jones her specific diagnosis. When Jones asked Mother if she had been seeing a doctor to address her mental health issues, Mother responded that it was none of her business. Mother also reported that she had not been taking the medication that she had been prescribed for her mental health issues because "she was happy."

In addition to Mother's mental health issues, Jones had other concerns. Mother clutched the baby too tightly to her body and refused to bottle feed her even though she was not latching when Mother tried to breastfeed her. Further, although Mother had told Jones that Father was her "husband" and that he had been unable to be at the hospital for the delivery because he had to work, Jones later discovered that Father was actually married to another woman and that he was not at the hospital because he had been incarcerated for domestic abuse against his wife. Jones also discovered that Father had an extensive criminal history, including several violent offenses. Further, Jones learned that Mother had two other children, one who lived with a relative in California[3] and another who had been removed from Mother's custody by Child Protective Services in Arizona and had subsequently been adopted.

Based on these initial concerns, Jones believed that Mother and Father were unable to care for M.G. and posed an ongoing risk to her health and safety. Because

---

[3]Mother initially told Jones that her child lived with her mother in California, but Jones later discovered that Mother's sister, B.H., had custody of the child.

Jones could not locate suitable placement with a family member,[4] she recommended removal. The trial court signed an order naming the Department as M.G.'s temporary sole managing conservator, and she was ultimately placed in a foster home.

The Department provided service plans to both Mother and Father to ensure that they could provide a safe environment for M.G. if she were returned to their custody. The trial court specifically ordered Mother and Father to comply with all of the requirements of their respective service plans.

Under Mother's service plan, she was required to do the following before she could reunite with M.G.: (1) provide a lease or housing agreement with her name on it; (2) submit to a psychological evaluation to obtain an updated diagnosis reflecting her current mental health and follow all recommendations from this assessment; (3) utilize MHMR[5] services to engage in counseling and medication management; (4) display an understanding of the importance of consistently addressing her mental health needs and taking her prescribed medication; and (5) keep CPS updated

---

[4]As part of Jones's efforts to find suitable placement for M.G., she contacted Mother's sister, B.H. B.H. informed Jones that she had been trying unsuccessfully to help Mother deal with her mental health issues, which Mother had experienced her entire life and which are "very prevalent" in her family. As noted above, *see supra* note 3, B.H. has custody of one of Mother's other children and expressed her desire to gain custody of M.G. as well, but she was unable to travel to Texas from her home in California at the time she spoke to Jones.

[5]MHMR stands for "My Health My Resources," which is a local government unit that provides a number of community services, including mental health services, in Tarrant County. *See* MHMR, https://www.mhmrtarrant.org/about-us/ (last visited June 6, 2023).

regarding any medication that she was prescribed. However, Mother failed to comply with all of these requirements. Specifically, she failed to provide a lease or housing agreement with her name on it; she deliberately refused to participate in—or chose to prematurely end—court-ordered treatment for her mental health issues; she refused to comply with recommended services that a psychologist testified were required to provide a safe environment for M.G.; and she failed to show the Department that she was consistently taking her medication in the manner prescribed by her mental health provider.

Father's service plan required him to undergo a psychological evaluation, engage in individual counseling, complete a Batterer's Intervention and Prevention Program (BIPP), and submit to drug testing. Like Mother, Father failed to comply with the requirements of his service plan. Specifically, Father did not complete a BIPP or individual counseling and never underwent a drug test. In fact, Father told a caseworker that he felt that he did not need to comply with his service plan because it was not his fault that M.G. had been removed.

During the pendency of the case, Mother and Father not only failed to alleviate the Department's initial concerns by completing their service plans but also engaged in conduct that gave rise to new concerns. For example, after M.G.'s removal, Mother gave birth to another child who also had to be removed due to Father's apparent drug use and Mother's unwillingness or inability to obtain necessary mental health services. Additionally, Father was incarcerated from January to March 2022 for violating the

5

terms of his probation. Also, Mother informed a caseworker that Father had temporarily kicked her out of their apartment after an argument and that she had not been allowed to return without Father's permission because her name was not on the lease. This raised the possibility that Mother could become homeless.

Following a bench trial, the trial court signed an order terminating Mother's and Father's parental rights to M.G. In support of its termination of Mother's parental rights, the trial court found by clear and convincing evidence that Mother (1) had knowingly placed or knowingly allowed M.G. to remain in conditions or surroundings which endangered her physical or emotional well-being, *see* Tex. Fam. Code. Ann. § 161.001(b)(1)(D); (2) had engaged in conduct or knowingly placed M.G. with persons who engaged in conduct which endangered her physical or emotional well-being, *see id.* § 161.001(b)(1)(E); and (3) has a mental or emotional illness or a mental deficiency that renders her unfit to provide for M.G.'s needs and that this illness or deficiency, in all reasonable probability, will continue to render Mother unfit to provide for M.G.'s needs until M.G.'s eighteenth birthday, *see id.* § 161.003. In addition, the trial court found that Father had constructively abandoned M.G., that the Department had made reasonable efforts to return M.G. to Father, that Father had not regularly visited or maintained significant contact with M.G., and that Father had demonstrated an inability to provide M.G. with a safe environment. *See id.* § 161.001(b)(1)(N). Further, the trial court found that Mother and Father had each failed to comply with the provisions of a court order that specifically established the

6

actions necessary for them to obtain the return of M.G. after she had been removed from their care for abuse or neglect and after she had been in the Department's managing conservatorship for at least nine months and that termination of Mother's and Father's parental rights was in M.G.'s best interest. *See id.* § 161.001(b)(1)(O), (2).

Mother and Father each appealed.

**MOTHER'S APPEAL: THE EVIDENCE IS SUFFICIENT TO SUPPORT TERMINATION**

In five issues, Mother contends that the evidence is insufficient to uphold the findings supporting termination. For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. *Id.* § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

Due process demands the heightened standard of clear and convincing evidence because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982)); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). In a termination case, the State seeks not just to limit parental rights but to

erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *E.R.*, 385 S.W.3d at 554 (citing *Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92). For the same reason, we carefully scrutinize termination proceedings and strictly construe involuntary-termination statutes in the parent's favor. *E.N.C.*, 384 S.W.3d at 802; *E.R.*, 385 S.W.3d at 563; *Holick*, 685 S.W.2d at 20–21.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences, but they must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *J.F.C.*, 96 S.W.3d at 266. That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346

8

(Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved one or more of the conduct-specific grounds on which the termination was based and that the termination of the parent–child relationship would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

## A. Failure to Comply with the Provisions of a Court Order Under Section 161.001(b)(1)(O)

In her third issue, Mother contends that the evidence is legally and factually insufficient to support termination under Section 161.001(b)(1)(O) of the Family Code. This subsection authorizes the termination of parental rights when a parent fails to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of a child who has been in the permanent or temporary managing conservatorship of the Department for not less

9

than nine months as a result of the child's removal for abuse or neglect. Tex. Fam. Code Ann. § 161.001(b)(1)(O).

As set forth above, the trial court made a predicate finding pursuant to Section 161.001(b)(1)(O) that Mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of M.G. Although Mother's brief includes as one of her enumerated appellate issues an assertion that the evidence was legally and factually insufficient to support termination under Section 161.001(b)(1)(O) and sets forth the law applicable to termination under that subsection, it fails to point out any specific deficiencies in the evidence supporting the trial court's predicate finding under Section 161.001(b)(1)(O). Indeed, while the argument section of Mother's brief contains subsections addressing the lack of evidence to support the trial court's predicate findings under Sections 161.001(b)(1)(D) and (E) and the trial court's finding that termination is in M.G.'s best interest under Section 161.001(b)(2), it contains no such subsection addressing the trial court's findings under Section 161.001(b)(1)(O).[6] Essentially, Mother leaves it up to us to brief her issue, but we have no duty to do so. *See O'Neal v. Dale*, No. 02-20-00173-CV, 2021 WL 210848, at *8 (Tex. App.—Fort Worth Jan. 21, 2021, no pet.) (mem. op.) (citing *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.)). Thus, Mother has forfeited the issue due to inadequate briefing. *See* Tex. R.

_____

[6]Mother discusses service-plan related facts in the brief's Statement of Facts, but those are relevant to all of her appellate issues.

10

App. P. 38.1; *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *see also Jackson v. Vaughn*, 546 S.W.3d 913, 922 (Tex. App.—Amarillo 2018, no pet.); *McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *2–3 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.).

Even if Mother had not forfeited the issue, the record contains ample evidence to support termination under Section 161.001(b)(1)(O).[7] As detailed above, the trial court ordered Mother to comply with all of the requirements of her service plan. These requirements included, among other things, providing a lease or housing agreement with her name on it; submitting to an updated psychological evaluation and following all recommendations from this assessment; utilizing MHMR services to engage in counseling and medication management; and staying consistent with her prescribed medication.[8] The permanency specialist assigned to M.G.'s case testified that Mother had deliberately refused to participate in—or chose to prematurely end—court-ordered treatment for her mental health issues; had refused to comply with recommended services that a psychologist testified were required to provide a safe

[7]Because the record reflects that the Department was named M.G.'s temporary sole managing conservator as of August 9, 2021, it is beyond dispute that M.G. has been in the Department's temporary managing conservatorship for not less than nine months as required by Subsection (O). *See* Tex. Fam. Code. Ann. § 161.001(b)(1)(O).

[8]These requirements are sufficiently specific to notify Mother of the actions she had to take to retain custody. *See In re N.G.*, 577 S.W.3d 230, 239 (Tex. 2019) (requiring courts of appeals to consider order's specificity in Subsection (O) sufficiency analysis).

11

environment for M.G.; and had failed to show the Department that she was consistently taking her medication in the manner prescribed by her mental health provider. While Mother testified that she had taken her medication after M.G. was born, she also admitted that she was not currently taking it at the time of trial and that she had not taken it during her most recent pregnancy. She also admitted that she could not provide a lease or housing agreement with her name on it. This evidence could have rationally enabled the trial court to form a firm belief or conviction that Mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of M.G.[9] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O).

---

[9]The trial court's termination order specifically found that Mother failed to prove her affirmative defense under Section 161.001(d), which provides that a court may not order termination under Section 161.001(b)(1)(O) if a parent proves by a preponderance of the evidence (1) that she was unable to comply with specific provisions of the court order and (2) that she made a good faith effort to comply with the order and the failure to comply is not her fault. Tex. Fam. Code Ann. § 161.001(d). Although Mother never references or cites to Section 161.001(d) in her brief, some of her arguments concerning whether termination was in M.G.'s best interest touch on Mother's efforts to comply with the provisions of her service plan. *See In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (holding that although father did not explicitly raise a Section 161.001(d) argument in the court of appeals, his arguments should have alerted the court that he was urging a Section 161.001(d) defense). Therefore, in the interest of completeness, we hold that the evidence was legally and factually sufficient to uphold the trial court's finding that Mother failed to prove her affirmative defense under Section 161.001(d). The permanency specialist testified that Mother was discharged from her counseling program because "[s]he was not consistent with her involvement with the therapist" and "expressed throughout that she did not want to participate anymore" and that it was Mother's fault that her MHMR mental health assessment was never completed because Mother refused to cooperate regarding scheduling. Although Mother tried to explain that her failure to

Because Mother forfeited her challenge to the trial court's Subsection (O) predicate-ground finding and because we conclude that, even if she had not, the evidence is legally and factually sufficient to support termination under that subsection, *see J.P.B.*, 180 S.W.3d at 573; *C.H.*, 89 S.W.3d at 28–29, we overrule Mother's third issue.

## B.  Endangerment Under Section 161.001(b)(1)(D) and (E)

Having concluded that Mother forfeited her challenge to the trial court's Subsection (O) predicate-ground finding, we have already determined that the requirements of Section 161.001(b)(1) have been satisfied in the present case. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (recognizing that "[o]nly one predicate finding under [S]ection 161.001[(b)](1) is necessary to support a judgment of termination"). This would ordinarily end our Section 161.001(b)(1) analysis. *See, e.g.*, *In re C.W.*, 586 S.W.3d 405, 406 (Tex. 2019) ("To affirm termination of parental rights on appeal, appellate courts often detail the evidence in support of only one termination ground . . . even if the trial court based the termination on more than one ground."). But the Texas Supreme Court has recognized that because Subsection (M) allows a trial court to terminate the parental rights of a parent whose parent–child relationship with another child was terminated based on a finding under (D) or (E), Tex. Fam. Code Ann. § 161.001(b)(1)(M), a trial court's finding under either Subsection (D) or (E) has consequences for termination

complete her court-ordered service plan was due to a lack of understanding, the trial court, as the sole judge of the witnesses' credibility, *see J.O.A.*, 283 S.W.3d at 346, was free to reject her explanation.

of parental rights as to other children. *C.W.*, 586 S.W.3d at 406. Thus, when a parent challenges a Subsection (D) or (E) finding, due process and due course of law demand that we address the finding and detail our analysis. *N.G.*, 577 S.W.3d at 235, 237; *see C.W.*, 586 S.W.3d at 407 (relying on *N.G.* and holding same); *see also Z.M.M.*, 577 S.W.3d at 543 (relying on *N.G.* to hold that the court of appeals erred by not addressing the father's sufficiency challenge to the trial court's Subsection (D) finding). Accordingly, we address Mother's first and second issues in which she challenges the legal and factual sufficiency of the trial court's predicate-ground findings under Subsections (D) and (E).[10]

Section 161.001(b)(1)(D) and (E) both require a finding of endangerment. "'[E]ndanger' means to expose to loss or injury" or "to jeopardize." *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)); *see also In re J.V.*, No. 02-15-00036-CV, 2015 WL 4148500, at *3 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.) ("A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards."). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Tex. Dep't of Human Servs.*, 727 S.W.2d at 533.

---

[10]Because the evidence concerning Subsections (D) and (E) is interrelated, we address these issues together. *See In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *see also Vann v. Gaines*, No. 02-06-00148-CV, 2007 WL 865870, at *1 (Tex. App.—Fort Worth Mar. 22, 2007, no pet.) (mem. op.) (addressing interrelated issues together).

Endangerment under Subsection (D) arises from the child's environment, but a parent's conduct can contribute to an endangering environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "[A]busive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *Id.*; *see J.V.*, 2015 WL 4148500, at *3 ("Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home under section 161.001(b)(1)(D)."). To prove endangerment, it is not necessary that a parent's conduct be directed at the child or that the child actually suffer injury. *J.T.G.*, 121 S.W.3d at 125. A parent's decision to continue living with someone who has committed instances of domestic violence may support an endangerment finding under Subsection (D). *See In re M.V.*, 343 S.W.3d 543, 547 (Tex. App.—Dallas 2011, no pet.). We may consider a parent's endangering conduct toward other children to determine whether the parent engaged in behavior that endangered the child at issue. *See In re S.H.*, No. 02-17-00188-CV, 2017 WL 4542859, at *11 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.). Additionally, Subsection (D) permits termination based upon a single act or omission. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Under Subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's

15

conduct, including acts, omissions, or failures to act. *In re T.T.F.*, 331 S.W.3d 461, 483 (Tex. App.—Fort Worth 2010, no pet.); *accord In re E.M.*, 494 S.W.3d 209, 221 (Tex. App.—Waco 2015, pets. denied). Either the parent's conduct or the conduct of a person with whom the parent knowingly leaves a child that endangers his or her physical or emotional well-being is sufficient. *E.M.*, 494 S.W.3d at 221. Termination under Subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *M.R.J.M.*, 280 S.W.3d at 502.

Applying the standards articulated above, we conclude that legally and factually sufficient evidence supports the trial court's findings under Subsections (D) and (E) that Mother endangered M.G. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). First, Mother's living situation created a dangerous situation for M.G. As detailed above, Mother was unable to present a lease or a housing agreement with her name on it as required by her service plan.[11] Because Mother lived with Father but was not married to him and was not named on his apartment lease, her living situation was subject to Father's whims—and was thus unstable.[12] The instability of this situation is

_____

[11]Nothing in the record suggests that Mother's failure to present a lease or housing agreement with her name on it was due to economic disadvantage. *See* Tex. Fam. Code Ann. § 161.001(c). To comply with her service plan, Mother only needed to have her name added to the existing lease on the apartment she shared with Father; there was no explicit requirement that she obtain additional or separate housing.

[12]The Department argues that Mother's living situation created a dangerous environment for M.G. not only because it was unstable but also because Mother lived

16

demonstrated by the fact that Father had already kicked Mother out of the apartment at least twice following arguments, leaving her with nowhere to go.

Second, the record shows that Mother failed to cooperate with the Department. *See In re T.J.*, No. 05-22-00954-CV, 2023 WL 1988838, at *9 (Tex. App.—Dallas Feb. 14, 2023, no pet.) (mem. op.) (holding that evidence showing "[m]other failed to cooperate with the Department and failed to participate in the services she needed to complete in order to preserve her relationship with the children" supported a finding of endangerment). Mother lied when first approached by the Department's investigator at the hospital, telling her that Father was her husband and that he was not present for M.G.'s birth because he was working when, in reality, Father was married to another woman and was not present because he had

with Father—a man with an extensive criminal history, including multiple convictions for family violence. *See, e.g.*, *In re L.W.*, 609 S.W.3d 189, 200 (Tex. App.—Texarkana 2020, no pet.) ("[A]busive or violent conduct by a parent or other resident of a child's home can produce an environment that endangers the physical or emotional well-being of a child." (quoting *In re B.E.T.*, No. 06-14-00069-CV, 2015 WL 495303, at *5 (Tex. App.—Texarkana Feb. 5, 2015, no pet.) (mem. op.))). But, as Mother points out, although the Department asked the trial court to terminate Father's parental rights on Subsection (D) and (E) grounds, the trial court declined to do so, which suggests that the trial court determined that Father's mere presence in the home would not be sufficient to create a dangerous environment. We note that the trial court's refusal to find that the Department had satisfied its burden to show that Father's parental rights should be terminated under Subsections (D) or (E) does not equate to a positive finding that Father's presence in the home posed no danger to M.G. *See, e.g.*, *Phila. Indem. Ins. v. White*, 490 S.W.3d 468, 488 (Tex. 2016). However, because the record contains other sufficient evidence to support termination of Mother's parental rights under Subsections (D) and (E), we need not determine whether Mother's continued cohabitation with Father may be considered as additional evidence of endangerment.

been incarcerated for domestic abuse against his wife. In addition, on a few occasions, Mother denied the permanency specialist access to her home, preventing the specialist from fully assessing whether the home was safe for M.G. Mother also refused—without explanation—to discuss her psychological evaluation with the permanency specialist, thereby impeding the Department's efforts to assess and address Mother's mental health problems.

Third, as detailed above, Mother failed to complete her service plan. *See T.J.*, 2023 WL 1988838, at *9; *see also In re A.J.A.D.*, No. 01-22-00521-CR, 2022 WL 17813763, at *8 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. denied) (mem. op.) (noting that "a parent's voluntary failure to engage in or complete services can constitute evidence of child endangerment, particularly to the extent the parent's failure to do so indicates that past endangering conduct remains unaddressed and is likely to persist in the future"); *In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.) (providing that as part of the endangering-conduct analysis, a court may consider a parent's failure to complete a service plan). Mother's service plan was primarily designed to address her mental health issues; thus, her failure to complete her services and to demonstrate that she was taking her prescribed medication strongly supports the trial court's endangerment findings.[13] *See In re L.L.F.*, No. 02-11-

---

[13]This case is distinguishable from *In re C.E.* in which we held that the evidence was insufficient to support termination under Subsection (E) and Section 161.003 because there was no "competent evidence . . . of how the [parent's] mental health diagnosis le[d] to [her] concerning behavior." No. 02-22-00285-CV, 2023 WL 170762,

18

00485-CV, 2012 WL 2923291, at *15 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.) (recognizing that "a parent's failure to take medication can create an environment or expose a child to an environment that endangers the child's emotional or physical well-being"); *In re K.G.*, 350 S.W.3d 338, 355 (Tex. App.—Fort Worth 2011, pet. denied) ("[T]he trial court could have chosen to believe that Mother's . . . failure to . . . take steps to treat her mental health issues demonstrated an inability to provide [the child] with a safe environment."); *see also In re E.G.*, No. 07-20-00098-CV, 2020 WL 3477176, at *1 (Tex. App.—Amarillo June 25, 2020, no pet.) (mem. op.) (listing mother's failure to "complete[] a number of her court-ordered services aimed at improving her mental health and parenting skills" as evidence supporting termination under Subsections (D) and (E)).

In sum, there was evidence that Mother failed to secure stable housing, did not fully cooperate with the Department, and did not comply with her service plan. Giving due deference to the trial court's findings, *see H.R.M.*, 209 S.W.3d at 108, we find that the evidence is legally and factually sufficient to support termination of

---

at *15–19 (Tex. App.—Fort Worth Jan. 12, 2023, pet. filed) (mem. op.). Like *C.E.*, much of the evidence in this case concerning how Mother's mental health issues might affect her ability to parent M.G. is speculative. However, unlike the mother in *C.E.*, who completed all of her required services, including attending therapy sessions, *see id.* at *17, *21, Mother only made "minimal progress" on her service plan. Her failure to take steps that the Department believed were necessary to ensure a safe environment for M.G., including addressing her mental health issues and taking her prescribed medication consistently, supports termination under Subsections (D) and (E). *See T.J.*, 2023 WL 1988838, at *9; *A.J.A.D.*, 2022 WL 17813763, at *8; *R.F.*, 115 S.W.3d at 811.

Mother's parental rights under Subsections (D) and (E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). Accordingly, we overrule Mother's first and second issues.

## C. Best Interest Under Section 161.001(b)(2)

In her fifth issue,[14] Mother contends that the evidence is legally and factually insufficient to show that termination of her parental rights to M.G. is in the child's best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both a Subsection (b)(1) predicate ground and best interest. *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Factors that the trier of fact in a termination case may also use in determining the best interest of the child include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper

---

[14]We address Mother's fifth issue next because its disposition, coupled with our disposition of Mother's first three issues, obviates the need to address Mother's fourth issue. *See* Tex. R. App. P. 47.1; *see also Giant Res., LP v. Lonestar Res., Inc.*, No. 02-21-00349-CV, 2022 WL 2840265, at *4 (Tex. App.—Fort Worth July 21, 2022, no pet.).

one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.*

We hold that the evidence is legally and factually sufficient to show that termination of Mother's parental rights to M.G. is in the child's best interest. The trial court could have reasonably found that the evidence discussed above that supports the predicate-ground findings under Subsections (D), (E), and (O) also reflects that termination is in M.G.'s best interest. *See E.C.R.*, 402 S.W.3d at 249; *C.H.*, 89 S.W.3d at 28; *see also In re C.V.*, 531 S.W.3d 301, 305 (Tex. App.—Amarillo 2017, pet. denied) ("Unchallenged predicate-ground findings are binding and can support the best interest finding." (first citing *In re K.M.*, No. 07-16-00120-CV, 2016 WL 3660076, at *3 (Tex. App.—Amarillo June 29, 2016, no pet.) (mem. op.); and then citing *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied))); *cf. In re J.P.-L.* 592 S.W.3d 559, 582–88 (Tex. App.—Fort Worth 2019, pet. denied) (discussing caselaw on competence and capacity and pointing out the impact a parent's mental health issues can have on a child). In addition, the record shows that Mother has had four children, all of whom have been removed from her care, *see In re*

*B.K.D.*, 131 S.W.3d 10, 22 (Tex. App.—Fort Worth 2003, pet. denied) (per curiam) (considering parent's CPS history as a factor in best interest analysis), and that M.G.'s foster parents have an appropriate home, are taking good care of M.G., and are adoption motivated, *see C.H.*, 89 S.W.3d at 28 (noting that evidence about placement plans and adoption are relevant to child's best interest); *see also In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (considering the fact that child was being well cared for by foster parents as a factor in best interest determination). Furthermore, M.G.'s attorney ad litem supported the termination of Mother's parental rights. *Cf. In re G.H.*, No. 02-17-00193-CV, 2017 WL 4683925, at *9 (Tex. App.—Fort Worth Oct. 19, 2017, no pet.) (mem. op.) (considering an attorney ad litem's recommendation in a best-interest review).

Considering all of the evidence discussed above and the remainder of the record, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights was in M.G.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *A.B.*, 437 S.W.3d at 500; *J.P.B.*, 180 S.W.3d at 573. Accordingly, we overrule Mother's fifth issue.[15]

---

[15]In her fourth issue, Mother challenges the legal and factual sufficiency of the evidence to support termination under Family Code Section 161.003. *See* Tex. Fam. Code Ann. § 161.003. Having overruled Mother's other issues and thus having concluded that the evidence was sufficient to support termination under Section 161.001(b), we need not address Mother's fourth issue. *See* Tex. R. App. P. 47.1.

## FATHER'S APPEAL: THE APPEAL IS FRIVOLOUS

In Father's appeal, his appointed appellate counsel has filed a motion to withdraw and brief in support of that motion in which he asserts that Father's appeal is frivolous.[16] *See Anders*, 386 U.S. at 744–45, 87 S. Ct. at 1400; *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, order) (holding that *Anders* procedures apply in parental termination appeals). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and by demonstrating why there are no arguable grounds for appeal. Neither Father nor the Department filed a response to the *Anders* brief.

Once an appellant's court-appointed attorney files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of *Anders*, we must independently examine the record to determine if any arguable grounds for appeal exist. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays v. State*, 904 S.W.2d 920, 922–23 (Tex. App.—Fort Worth 1995, no pet.); *see also In re P.M.*, 520 S.W.3d 24, 27 & nn.9–10 (Tex. 2016) (order). When analyzing whether any grounds

---

[16]Although Father's counsel asserts that the appeal is frivolous because there is sufficient evidence to support termination of Father's parental rights under Section 161.001(b)(1)(O) and (b)(2), he points out that the evidence is insufficient to support the trial court's predicate-ground finding under Section 161.001(b)(1)(N) and therefore requests that we modify the trial court's order to delete the Subsection (N) finding. As more fully discussed below, we agree that the evidence is insufficient to support the Subsection (N) finding and therefore grant Father's counsel's request to modify the trial court's judgment. *See* Tex. R. App. P. 43.2(b).

for appeal exist, we consider the record, the *Anders* brief, and any pro se response. *In re Schulman*, 252 S.W.3d 403, 408–09 (Tex. Crim. App. 2008) (orig. proceeding).

After carefully reviewing the record, we have determined that the evidence is insufficient to support the trial court's predicate-ground finding under Subsection (N). To support termination of a parent's rights under Subsection (N), a factfinder must find by clear and convincing evidence that, among other things, "the parent has not regularly visited or maintained significant contact with the child." Tex. Fam. Code Ann. § 161.001(b)(1)(N)(ii). As Father's appellate counsel points out in his brief, the evidence in this case—including the testimony of the Department's own witnesses— shows that Father regularly visited M.G. and maintained significant contact with her. Indeed, the Department did not even seek termination of Father's parental rights on Subsection (N) grounds. Therefore, even though correcting this finding does not alter the final outcome of this case, we nonetheless "modify the trial court's order to match the facts" by striking the unproven Subsection (N) predicate-ground finding. *See In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *13 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.) (modifying termination order to remove erroneous reference to the mother's indecency with a child even though "correcting this finding d[id] not alter the final outcome of th[e] case"); *In re J.A.*, No. 04-20-00242-CV, 2020 WL 5027663, at *4 (Tex. App.—San Antonio Aug. 26, 2020, no pet.) (mem. op.) (modifying judgment to remove three predicate findings because "[t]he record show[ed], and the parties agree[d], that the Department pled and argued that

[the mother's] parental rights should be terminated under only grounds (N), (O), and (P), not under grounds (D), (E), or (K)"); *see also* Tex. R. App. P. 43.2(b).

Except for the modification to the termination order discussed above, we agree with counsel that Father's appeal is wholly frivolous and without merit. *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005). Because counsel does not show good cause for withdrawal independent from his conclusion that the appeal is frivolous, we deny the motion to withdraw. *See P.M.*, 520 S.W.3d at 28; *In re C.J.*, 501 S.W.3d 254, 255 (Tex. App.—Fort Worth 2016, pets. denied).

## CONCLUSION

Having overruled Mother's dispositive issues and having agreed with Father's counsel that Father's appeal is frivolous but that the evidence is insufficient to support the trial court's predicate-ground finding under Section 161.001(b)(1)(N), we modify the trial court's termination order to remove the unproven finding that termination of Father's rights is appropriate under Section 161.001(b)(1)(N) and affirm as modified the trial court's order terminating Mother's and Father's parental rights to M.G.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: June 15, 2023

25